GLADYS B. HALL

*vs.*

WILLIAM N. CROSBY, LENA WIGHT AND WILLIAM W. WIGHT.

FRED B. HALL

*vs.*

WILLIAM N. CROSBY, LENA WIGHT AND WILLIAM W. WIGHT.

Oxford. Opinion June 14, 1932.

*George A. Hutchins,*
*Ralph T. Parker,* for plaintiffs.
*Berman & Berman,*
*Edward Murray,* for defendant Crosby.
*Fred H. Lancaster,*
*John J. Connor,* for defendants Wights.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

BARNES, J.   These cases come up on exceptions and general motions for new trials by defendants Wight. They are actions for negligence in the driving of automobiles, tried in the Superior Court and argued here together.

Plaintiff in the first action was seriously injured in a collision of two automobiles.

Her husband is the plaintiff in the second action.

Mrs. Hall was a passenger in a Ford car, owned by defendant, Lena Wight, and driven at the time of the accident by William W. Wight, her minor son.

The occasion of the ride was that Mrs. Wight was taking her son from their home to Orono, and Mrs. Hall was invited to accompany them and to drive the car on the return.

A boy friend of William sat in the right front seat, and between the two boys sat a daughter of Mrs. Hall, nine years of age. Mrs. Wight sat in the rear seat, on the right side, Mrs. Hall in the rear, left seat, and between them a daughter of Mrs. Wight. The relation of the mother and son, in the premises, is that of principal and agent.

The collision occurred about six-thirty in the afternoon, on Hammond Street, in the residence section of Bangor, less than two hundred feet westerly from the point where trolley tracks, leading from the north, enter that street. Here, on the northerly side of the street, defendant Crosby resides. Hammond Street is the principal thoroughfare from eastern to central Maine, and is a modern road, the travelled part being a twenty feet strip of cement, with wide gravelled shoulders. The street runs easterly into the city, is straight and practically level at the location of the collision.

The Crosby dwelling stands fifty-eight feet northerly of the cement roadway, a garage east of the house, and from it a straight, wide driveway runs to the road. Mr. Crosby accompanied by his wife, backed his car, as he testified, toward the street, stopped it before entering upon the street, looked westerly and saw the Wight car approaching, and then as he thought about a thousand feet away. He testified that after pausing he backed across the street onto the right hand side of the cement, facing east, and had started ahead when the Wight car struck his car in the rear.

The Wight car overturned and lay just off the cement, on the right side of the road, headed toward Bangor. Mrs. Hall was seriously hurt and brought suit against the three defendants.

Mr. Crosby retained an attorney and the Wights another. At the trial six exceptions were reserved, five because evidence was admitted, over objections of both counsel for defendants, regarding damages for permanent injury, the sixth because counsel for defendants Wights was not allowed to cross-examine a witness introduced by the other defendant.

Of the five exceptions, the first was reserved in the examination of Dr. Lee, an orthopedic surgeon.

In the accident, Mrs. Hall suffered fractures of one of her pelvic bones. Dr. Lee was shown an X-ray picture of the bone after heal-

ing had taken place, and was asked what the picture showed, "as the position of the bone at the present time."

In order for the jury to determine what sum, if anything, plaintiff should recover for suffering at the time of the accident and up to the day of trial, it was essential that they know whether or not a pelvic bone was fractured, and if so, whether in the process of healing the bone had united so as to bear its share in the support of the body, in normal juxtaposition with the other members furnishing pelvic support.

It is argued that the answer might show permanent injury. Any report on the result after fracture of a bone may lead to inquiry as to permanent injury. But it is none the less receivable to shed what light it may on the character and intensity of the suffering caused by the injury. The question was clearly admissible.

The second exception was reserved to admission of the following interrogatory: "I show you plaintiff's exhibit, No. 7 and ask you what that shows."

The answer was that the picture showed a symmetrical pelvis.

Not being prejudiced by the answer, defendant takes nothing from this exception. *State* v. *Loring*, 123 Me., 181, 122 A., 417.

The third was reserved to refusal to have stricken out a portion of an answer as being objectionable dissertation.

Asked, "And will you indicate on plaintiff's exhibit No. 10 where the fractures of the pelvic bone were?", the doctor answered, "Just about where this string is there, and a similar fracture below here in such a way that this is driven in, in that manner, and broke this bone and made it over-ride just the same as you would hit a barrel and drive a stave in. Simply compresses it in that way. Narrows the outlet. Instead of over-riding in the middle as it does there it over-rides at the point of fracture." The question was relative to the doctor's interpretation of an X-ray picture which was an exhibit and to be taken out with the jury.

The answer is not objectionable. True, it may be said to exhibit zeal in expressing what the plate revealed, but the language can not be held prejudicial to defendants and the illustration of "over-riding" is apt.

The fourth exception was reserved to the admission of the ques-

tion, "Can the condition which you find there at the present time be improved by surgery, Doctor?" Bearing in mind that the testimony on which the husband's case was being tried was being put in at the same time with the wife's, and that it is a husband's duty to provide surgical aid in restoring a wife, the question should be put and answered.

The last of the exceptions on this line was as to disturbance with control of the bladder.

No allegation of injury to that organ was in the pleadings, and the testimony shows that any suffering from injury to the organ or to nerves controlling it had been cleared up and discontinued before the trial; so we hold that admitting the question and answer was not harmful.

In a case of exceptions to the admission of evidence limited to the showing of injury of the kind known in law as permanent, unless such injury is specially pleaded the exceptions would be sustained, as has been recently held in *Fournier* v. *The Tea Co.*, 128 Me., 393, 148 A., 147.

But at the trial of the cases at bar the evidence objected to constituted an essential part of proof, as to suffering until healing be complete so far as the wife is concerned, and to inform the jury as to probable expense to be required of the husband, as well as for loss of consortium for the same term. The record shows that when the ruling was made the Court said he was receiving testimony as to what the injuries were, on the ground of pain and suffering, and no exceptions were taken to his directions to the jury in his charge.

The last exception arose during the cross-examination of a witness introduced and examined in chief by counsel for defendant Crosby.

This witness was the automobile body mechanic who examined Mr. Crosby's car after the accident.

Plaintiffs claimed damages for injuries inflicted by the defendants, as tort-feasors, from either or any of them as the evidence should show liability, joint or several.

The mechanic had answered all questions put to him by Mr. Crosby's counsel and by counsel for plaintiffs.

Counsel for defendants Wight requested permission to examine

the witness and was denied. He considers this action by the court reversible error.

No ruling of this court can be found, in a civil action, where one of several codefendants has been refused the privilege of cross-examining a codefendant when their interests were adverse. But on the criminal side the same question arose and was decided, in 1923, in the case *State* v. *Crooker*, 123 Me., 310, 122 A., 865. In that case the right was accorded to a corespondent on the authority of the constitution, which grants to one accused of crime confrontation of the witnesses against him, the Court saying, "To be confronted by the witnesses against him does not mean merely that they are to be made visible to the accused so that he shall have the opportunity to see and hear them, but it imports the constitutional privilege to cross-examine them."

In the same case it was said by way of dictum that the testimony of a witness introduced by and for the corespondent was unimportant and that no rights of appellant were sacrificed in denying his cross-examination.

It is of course obvious that where a writ is sued out against three for damages as tort-feasors their interest may be adverse, and the point is to be settled upon evidence. Suppression of evidence as to the part played by one of the three may result in absolution of that one.

Rule XXXV of the Rules of Courts, that cross-examination of each witness shall be conducted by one counsel only on each side, except by special leave of Court, does not bar cross-examination by counsel of a codefendant, for where interests are actually and actively adverse there are as many "sides" as adverse interests, or because the situation presents an exception to the rule.

If justice is to be established and right to other defendants sued as joint tort-feasors is to be done, it would seem that a defendant, or witness introduced by him, should be subjected to cross-examination by a codefendant whose interest is adverse to that of the principal who introduced the witness.

It may be that the ruling complained of was of little importance in arriving at a verdict; but it is of the highest importance that the general practice, in the application of rules of evidence, should be uniform and settled.

"A fair and full cross-examination to develop facts in issue or relevant to the issue is a matter of absolute right and is not a mere privilege to be exercised at the sound discretion of the presiding judge, and the denial of the right is prejudicial error." *Grossman* v. *Rosenberg*, 237 Mass., 122, 129 N. E., 424, 425.

In a case in equity before this court, Mitchell, T. R. Sampson, and Abigail Sampson were defendants, and filed separate answers. Discussing the rule that the answer of Mitchell is not to be taken as evidence against Abigail Sampson, the court proceeds:

"This is the general rule. There are exceptions; but this case does not come within them, the defendants not being copartners, nor in a situation to authorize the admissions of one to become evidence against the other. The reason of the rule is, that the defendant sought to be affected, could have had no opportunity for cross-examination.

"An order might have been obtained to examine Mitchell as a witness; in which case he would have been subject to a cross examination by the other defendants." *Robinson* v. *Sampson*, 23 Me., 388.

By parity of reasoning such should be the privilege of a defendant at law.

But one case has been brought to our attention involving the point at issue here.

In that case one, "Hildenbrand appeared on the trial by Sullivan and Sullivan and the defendant insurance company by Mr. Gorman. Cross-examination of witnesses was conducted by Mr. Sullivan.

"On the latter's ceasing, Mr. Gorman, in several instances, asked the privilege of further cross-examination. This was permitted by the court in every instance where the interests of the Hildenbrands and the company were adverse, as in connection with the question whether the car involved in the collision was insured. In all other instances it was denied."

Held that the procedure was correct, under a rule similar to our Rule XXXV. *Kiviniemi* v. *Hildenbrand*, Wis. (1930), 231 N. W., 252.

Hence we conclude, on principle and authority that the ruling complained of was contrary to sound judicial discretion and was error. This exception is sustained.

Since the case is subject to a new trial it will serve no useful purpose to discuss rights under the motion.

*Exception to refusal to allow cross-examination, by a defendant, of witness introduced and examined by a codefendant, where the interests of the defendants are adverse, sustained.*