FRED C. KLINGBEIL v. ORVILLE S. TRUESDELL,
d.b.a. DEW DROP INN, AND OTHERS.

98 N. W. (2d) 134.

August 7, 1959—No. 37,638.

*Mahoney & Mahoney* and *Harry H. Peterson,* for appellant.

*S. P. Gislason, Gislason, Reim, Minium, Alsop & Dosland,* and *Peterson, Peterson & Krieger,* for respondent.

MURPHY, JUSTICE.

This case involves an action against the operator of a tavern for injuries sustained by a patron as a result of an assault committed upon the defendant's premises. The plaintiff had a verdict. The defendant appeals from an order denying his motion for judgment notwithstanding the verdict or for a new trial and from the judgment.

Viewing the facts in the light most favorable to the verdict, it appears from the record that at about 9 a. m. one Carl Weik and his friends, Melvin and Lester Ackland, entered the defendant's tavern in the city of Albert Lea. Carl Weik's wife followed a few minutes later. Ben Holte, another patron, was there when they arrived. They remained in the tavern until about 4:30 p. m., during which time they were drinking beer and whiskey. Other patrons came and went during this interval. There were arguments and boisterous conduct during this time.

At about 3 p. m. the plaintiff entered the tavern. He exchanged words with other patrons of the tavern and, after some conversation with the Weiks and the Acklands, he left the premises, saying that he was going to get a policeman. It appears that he actually found a police officer and reported to him that the Weiks were permitting Holte, an elderly man, to spend his money buying beer for them and that Weik should be thrown in jail. The police officer declined to do anything, after which plaintiff said, "I ought to punch him in the snoot." After an absence from the premises for about 20 minutes, plaintiff returned. During this time Weik was pacing back and forth in the bar and in statements to others made threats against the plaintiff. The general atmosphere in the tavern at that time was one of trouble and agitation. After plaintiff returned to the bar, he renewed his conversation with Weik during the course of which a struggle began. Both men fell to the floor. The barmaid who was on duty started around the bar to see what was happening; and as plaintiff was about to get up from the floor and was on his knees, Melvin Ackland, who had been standing by but up until that moment had not been a part of the fracas, struck him a blow on the left side of his head which knocked him backwards. As a result of this assault the plaintiff suffered severe and permanent injuries.

■ The defendant's first contention is that the operator of a 3.2 beer tavern is not liable to a patron of his establishment for injuries suddenly and unexpectedly inflicted upon him by another patron under circumstances where the operator could not have prevented the injuries by the exercise of reasonable care. It is unnecessary to labor this point further than to state that the issue here is controlled by our decision in Windorski v. Doyle, 219 Minn. 402, 18 N. W. (2d) 142,

and Priewe v. Bartz, 249 Minn. 488, 83 N. W. (2d) 116. In the latter case we observed that the operator of a 3.2 beer establishment owes a duty to those coming upon his premises to exercise reasonable care to protect them from injury at the hands of other patrons. He has the duty to see to it that a patron is not injured by vicious or drunken individuals whom he permits to frequent his establishment. We stated (249 Minn. 491, 83 N. W. [2d] 119):

"* * * A patron at a 3.2 bar has a right to rely on the belief that he is in an orderly house and that its operator, personally or by his delegated employee, will exercise reasonable care 'to the end that the doings in the house shall be orderly.' See, 30 Am. Jur., Intoxicating Liquors, § 609; Curran v. Olson, 88 Minn. 307, 308, 92 N. W. 1124, 60 L. R. A. 733; Mastad v. Swedish Brethren, 83 Minn. 40, 85 N. W. 913, 53 L. R. A. 803; Christianson v. Hager, 242 Minn. 41, 64 N. W. (2d) 35; Klaman v. Hitchcock, 181 Minn. 109, 231 N. W. 716; Sylvester v. Northwestern Hospital, 236 Minn. 384, 389, 53 N. W. (2d) 17, 20; Cherbonnier v. Rafalovich (D. Alaska) 88 F. Supp. 900; Annotation, 29 A. L. R. (2d) 911; Windorski v. Doyle, 219 Minn. 402, 18 N. W. (2d) 142."

We further observed that (249 Minn. 492, 83 N. W. [2d] 120):

"* * * 'authorities recognize that drunken behavior is unpredictable; also that slight irritations, real or imaginary, may cause outbursts of anger and lead to aggressive acts.' "[1]

The presence of an intoxicated person upon the premises immediately exposes the proprietor to the hazards of liability resulting from the unpredictable conduct of such person and, when it appears that such intoxicated person might cause a disturbance or harm to other patrons, the proprietor is obliged to take some affirmative action to maintain order on the premises by demanding that such person leave or by calling authorities to enforce such demand.

Here the evidence establishes that Carl Weik, his wife, and Melvin Ackland had been on the premises from 9 a. m. until approximately

---

[1]Sylvester v. Northwestern Hospital, 236 Minn. 384, 389, 53 N. W. (2d) 17, 20.

4:30 p. m. During this time they had been drinking beer and, although it was a 3.2 establishment, they had also been drinking whiskey. The conduct permitted in the establishment during this time was disorderly. There were quarrels and arguments. The language used by some of the patrons was inflammatory. Mr. and Mrs. Weik quarreled over a bottle of whiskey and during the course of the quarrel the wife struck her husband. We think there is ample evidence in the record from which the jury could find that both Weik and Ackland were intoxicated to the point where the proprietor or his servant should have been aware of the fact that their conduct would lead to trouble.

■ The defendant, however, contends that the authorities just cited do not control because the plaintiff was a licensee and not an invitee to whom he owed the duty to exercise reasonable care to protect him from injury at the hands of other patrons. The defendant argues that the plaintiff at the time of his injury was not upon his premises as an invitee or business patron but that he came there to pursue an argument with Weik. He asserts that plaintiff was a licensee as a matter of law.

It appears that in Yeager v. Chapman, 233 Minn. 1, 45 N. W. (2d) 776, 22 A. L. R. (2d) 1260, we adopted the test in Restatement, Torts, § 332, to the effect that:

"A business visitor is a person who is invited or permitted to enter or remain on land in the possession of another for a purpose directly or indirectly connected with business dealings between them."

The defendant does not contend that the trial court did not state the rule correctly in its instructions.

Since the crucial factor in determining plaintiff's status on defendant's property at the time of injury is the purpose for which the plaintiff came upon the premises, it is necessary to examine the record as it relates to plaintiff's position as a licensee or invitee at the time the injury occurred. While on the day the injuries occurred the plaintiff and defendant Weik were not on friendly terms, it appears that they had been acquaintances for some considerable time. On this particular occasion the plaintiff in his conversations with Weik had been critical of the latter's conduct. Apparently he objected to Ben Holte spending

money to buy beer for the Weik party. He criticized Weik for not working and for not paying his bills. It appears that the plaintiff had loaned money to the Weiks so that Mrs. Weik might pay her dentist for a denture, and he was apparently annoyed on finding that Mrs. Weik had mislaid the denture during the course of the day's activities. He also warned Weik not to drive his automobile and that if he did the police would arrest him. He later found a policeman to whom he reported something of Weik's conduct and, after the policeman told him there was nothing he could do, plaintiff returned to the premises. He was unable to tell his version of what occurred because at the time of the trial he suffered from aphasia and paralysis so that he could neither talk nor write. When the plaintiff returned to the premises another patron, who apparently wished to continue or renew the belligerent mood of those present, volunteered the information that during plaintiff's absence Weik had made certain threatening and derogatory remarks about him. This prompted the plaintiff to again talk with Weik, as a result of which the scuffle and eventual damage followed. We think on the record there was a question of fact for the jury as to the purpose for which the plaintiff entered the establishment the last time. It was for the jury to say whether the plaintiff under the circumstances came upon the premises as an invitee in the ordinary course of patronage or whether he returned for the purpose of pursuing an argument with Weik. Since reasonable minds might differ as to the status of the plaintiff upon the premises, we think that the issue was one of fact properly submitted to the jury.

■ The contention of the defendant that the plaintiff was contributorily negligent as a matter of law encompasses the issue as to the plaintiff's status upon the premises which we have just discussed. It is argued that plaintiff was contributorily negligent by remaining upon the premises after he was told that Weik had made threats and derogatory statements concerning him and that he was contributorily negligent thereafter in continuing his talk with Weik. The trial court was fully cognizant of the importance of this issue and properly submitted the question of the plaintiff's alleged contributory negligence to the jury. We agree with the trial court that the plaintiff was not contributorily negligent as a matter of law. While it might have been

the better part of discretion for the plaintiff not to remain on the premises, reasonable minds could differ as to whether his conduct failed to measure up to the standard of care required by law under the circumstances. The standard of conduct required by law is not perfect conduct. Nadeau v. Minneapolis, St. P. & S. S. M. Ry. Co. 182 Minn. 111, 233 N. W. 808. The standard by which the conduct of a person in a particular situation is to be judged in determining whether he was negligent is the care which an ordinarily prudent man would exercise under like circumstances. 13 Dunnell, Dig. (3 ed.) § 6970; 38 Am. Jur., Negligence, § 30; Prosser, Torts (2 ed.) § 31; Frank v. Stiegler, 250 Minn. 447, 84 N. W. (2d) 912.

■ The next point raised by the defendant Truesdell is that the court erred in denying his attorney the right to cross-examine the defendant Weik after he had testified as a witness in his own behalf. The precise question raised here is whether a defendant may cross-examine his codefendant in a personal injury action under circumstances where they are on the same side of the case and their interests are not adverse. There are authorities to the effect that a defendant's cross-examination of his codefendant should be permitted, at least in so far as such cross-examination pertains to matters brought out on direct examination. Annotation, 43 A. L. R. (2d) 1000. The question has been considered but not decided in two Minnesota cases.[2] The right of cross-examination is an inviolate right, but it presupposes adversity between the party wishing to cross-examine and the party for whom the witness has been called to testify. The right, which is of fundamental importance in the discovery of truth in the trial of a case, is intended for the use of an "opponent" (1) for the purpose of the further examination of a witness proffered by the opposite side so as to bring to light qualifying or contradictory facts and circumstances not disclosed by the witness on direct examination and (2) for the further purpose of developing those facts which may diminish the personal trustworthiness or credit of the witness which may have remained undisclosed on direct examination. 5 Wigmore, Evidence (3

[2]Moehlenbrock v. Parke, Davis & Co. 141 Minn. 154, 169 N. W. 541; Lund v. Olson, 182 Minn. 204, 234 N. W. 310, 75 A. L. R. 371.

ed.) § 1368. From an examination of the authorities it appears that the right of cross-examination is an absolute right only in regard to adverse witnesses. The *Ottawa*, 70 U. S. (3 Wall.) 268, 18 L. ed. 165; Gurley v. St. Louis Transit Co. (Mo.) 259 S. W. 895; Citizens Bank & Trust Co. v. Reid Motor Co. 216 N. C. 432, 5 S. E. (2d) 318; Aluminum Industries, Inc. v. Egan, 61 Ohio App. 111, 22 N. E. (2d) 459; Hall v. Crosby, 131 Me. 253, 160 A. 878; Proceedings Nebraska State Bar Assn. 37 Neb. L. Rev. 149; Annotations, 38 A. L. R. (2d) 952 and 43 A. L. R. (2d) 1000; 58 Am. Jur., Witnesses, § 614.

The latitude to be allowed in cross-examination on the merits is largely within the discretion of the trial court, and its action will not be reversed on appeal except for a clear abuse of discretion. Here we think the court did not abuse its discretion in denying the right of the defendant Truesdell to cross-examine his codefendant Weik. While they were codefendants, they were not opponents and Weik was not an adverse witness. At the outset of the trial the court asked counsel for defendant Truesdell:

"The Court: It is my understanding, Counselor, that there is no question but that there is no adversity of interest, I mean, there is no adversity of interest between the defendants as to any of the issues.

"Mr. Mahoney: That is right."

Later on in the trial, when the court considered plaintiff's objection to the right of Truesdell's counsel to cross-examine, the court said:

"The Court's position is that unless there can be some showing made to the Court that there is some adversity of interest, or some hostility in this witness that the Court has been unable to observe up to the present time, that counsel will be denied the right to cross-examine."

No showing whatsoever was made that the defendant Weik was adverse to the defendant Truesdell. Under the circumstances we cannot say that in denying the right to cross-examine the court committed prejudicial error which would require a new trial.

■ It is next contended that the court erred in permitting evidence as to the reasonable value of the plaintiff's services. The plaintiff was a small contractor operating as Fred Klingbeil & Son. He built homes

for sale and also under contract for others. He had been a carpenter for 25 or 30 years but had been in the construction business in his own right since 1946. Prior to the injuries he worked an 8-hour day, kept all the books and records of his operations, prepared bids and estimates, and supervised the work. At the time of the trial the father was confined to bed and was unable to speak or write. The court permitted the son to testify that the reasonable value of the father's services was from $250 to $300 per month. Since the son had been associated with his father in the contracting business since his discharge from the army, he was familiar with the nature and extent of the father's activities. We have been cited to no authority to the effect that opinion evidence is admissible to establish either loss of income or impairment of earning capacity. Nevertheless, we have said in numerous cases that mere difficulty in determining the amount of the loss due to the act of another is no reason for denying the plaintiff substantial damages. 5 Dunnell, Dig. (3 ed.) § 2594.

The establishment of damages growing out of loss of income, which is an item of special damage, and the diminution of ability to carry on usual activities in connection with one's work, which is an item of general damage, often presents troublesome problems of proof. The apparent difficulties encountered in proving diminution of earning capacity have now been largely solved by our decision in Wilson v. Sorge, 256 Minn. 125, 132, 97 N. W. (2d) 477, 483, where we noted that impairment of earning capacity is an item of general damages. "It permits recovery for a loss or diminution of the power to earn in the future and is based upon such factors as the plaintiff's age, life expectancy, health, habits, occupation, talents, skill, experience, training, and industry. It is within the province of the jury to weigh all these elements and, guided by experience and common sense, to arrive at the proper monetary value of plaintiff's loss without recourse to his past earnings." See, also, Zaikaner v. Small, 256 Minn. 275, 98 N. W. (2d) 247.

It remains for us to consider here the problem which the self-employed plaintiff faces in establishing proof of loss of income to the date of trial as an item of special damage. In Wilson v. Sorge, we stated (256 Minn. 132, 97 N. W. [2d] 483):

"* * * Loss of earnings is an item of special damages. As such, the loss must be specifically pleaded and proved."

The precise issue here deals with evidence which is competent to prove special damages. It is recognized that frequently, but not necessarily in every instance, the same evidence goes to the proof of both the general and special damages. However, since loss of income to date of trial must be established by particular proof the same as other items of special damage, it is necessary that more specific evidence be submitted on that issue. In Piche v. Halvorson, 199 Minn. 526, 532, 272 N. W. 591, 594, this court indicated that the loss of income or profit of one engaged in business for himself must be measured by the income attributable to his personal efforts. "Profits from the labor of others and returns on invested capital are to be excluded." We recognized that "The rule is simple to state but difficult to apply." But we also stated in Fredhom v. Smith, 193 Minn. 569, 575, 259 N. W. 80, 83, that:

"* * * the nature and extent of the business in question may be considered, and the services of the plaintiff therein, in order to ascertain the value of such lost services, for the value of such personal services are properly considered in this connection."

It should be recognized that there are numerous factors to be considered in arriving at loss of income, which factors vary according to the circumstances in each case. It is for the trial court in the exercise of its sound discretion to determine what elements of proof may be considered as bearing upon the item of loss of income, depending upon the circumstances of each case, and that discretion will not be disturbed unless it appears from the record that it has been clearly abused.

We think the court here properly exercised its discretion in permitting opinion evidence as to the reasonable value of plaintiff's services as bearing upon his loss of income. The plaintiff had been engaged in business for himself prior to the injury but the business had fallen off since that time and there is evidence in the record which indicates that this was due to his inability to carry on the work. Clearly then he had established the fact that he had sustained special damages up to

the time of the trial and only the amount thereof had to be determined. At the time of the trial the plaintiff was confined to bed and was unable to testify to that portion of the income and profits which was directly attributable to his personal efforts. We cannot say that it was prejudicial error under the circumstances to permit the son to testify as to the reasonable value of his father's services. This testimony could also be considered with other factors mentioned in the Wilson case in determining the extent of the impairment of the plaintiff's future earning capacity.

■ The plaintiff had a verdict for $32,000. The defendant contends that this verdict is excessive, unreasonable, and awarded under the influence of passion and prejudice. It appears from the record that plaintiff is a man 65 years of age; he was in excellent health, active, and working at the time of the injury. He had expenses to the date of trial of $2,133.95 for hospital and medical attention. He had lost 17 months of earnings up to the date of trial, which could be fairly estimated at another $4,250. He suffered a complete aphasia and is unable to talk, and his right arm and leg are paralyzed. The condition is permanent, and there is evidence that he will need constant care and attention the rest of his life. Under the circumstances we do not think the verdict is excessive.

Numerous other objections have been asserted. We have fully considered all of them and are of the view that they are without sufficient substance to require further discussion.

Affirmed.