F. B. Baylor, appellee, v. Clement L. Tyrrell, appellant.

131 N. W. 2d 393

Filed November 20, 1964.   No. 35737.

Healey, Healey & Goth, for appellant.

Baylor, Evnen, Baylor & Urbom, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, and BROWER, JJ., and DIERKS, District Judge.

WHITE, C. J.

This is a personal injury suit growing out of a car-pedestrian accident on May 2, 1962, at the intersection of Twenty-seventh and Van Dorn Streets in Lincoln, Nebraska. From a jury verdict and judgment in the sum of $14,200, the defendant appeals.

The plaintiff, 77 years of age, was struck on his left side, knocked off his feet, turned over twice, came to rest about 7 or 8 feet in front of defendant's car, complained of pain in his left hip, was given a sedative at the scene, and was taken to the hospital by ambulance.

Hospitalization disclosed painful injuries to the knees, shoulder, and jaw, and a more severe serious injury in the fracture of the neck of the femur in the left hip. An operation was necessary the afternoon of the accident by which the head of the ball of the hip joint was manipulated into place and fastened by the use of screws. His pain was eased at times by opiates, but was quite general in nature and was aggravated by the necessary movements and therapy required to regain his ability to walk. After 19 days in the hospital, he was able to walk with two crutches.

In the 17-month period between hospitalization and the time of trial, the plaintiff suffered pain, used forearm and shoulder crutches, and a cane. His left leg became weak, gets tired, and causes a general fatigue. The use of a crutch or cane will be required permanently.

The mortality tables give plaintiff a life expectancy of 5 years. He has a permanent and increasing future disability. This consists of a shortened left leg, a limp, a restriction of leg and hip motion, and a progressive degenerative condition of the bone because at his age the

bone lacks good circulation and powers of repair. The permanent disability was 20 to 25 percent at the time of trial, and will increase in the future. There is a general weakness and fatigue resulting from these conditions. The restriction of motion as to internal rotation of the hip is a condition that developed and then increased after about April 1963 and is indicative of progressive degenerative changes. Pain, in varying degrees, accompanies these conditions.

Plaintiff, at the time of the accident, was active in all phases of the practice of law. He lost 9 weeks from work while in the hospital and at home, and now can only work part of the time he devoted to the practice previously. The breadth of his activities in the practice has been narrowed.

The evidence shows that the plaintiff suffered considerable anxiety and anguish from the knowledge of the probabilities of degeneration of the hip bone, based on information given him by his doctor from time to time, including the advice that it could not be known for a year and a half after September 1963 whether an artificial hip bone might be necessary. Disregarding the detailed and voluminous testimony as to discomfort, pain, and subjective discomfort, the above résumé outlines the plaintiff's injuries in the different categories referred to. They are largely undisputed and are all supported by the evidence.

The first and major contention the defendant makes is that prejudicial error arose from improper final argument to the jury as to damages. Plaintiff's counsel, in final argument, broke the evidence down into about six different areas. These were pain and suffering at the time of the accident, the 19-day period of hospitalization, the 17 months after hospitalization until the time of trial, the future disability and pain, mental suffering and anxiety, and loss of earning capacity. As in most cases of this type, the evidence logically broke down into these different items or areas and no question appears or could

appear as to counsel's right to present and identify the damages separately in this fashion. The evidence clearly supports such an analysis. As to these different items or categories, plaintiff, in argument, suggested a flat amount for the jury to allow as to some of the above items. Brevity forbids quotation of the total argument. After summing up the plaintiff's experience and pain at the scene of the accident, counsel stated: "You will have to use your judgment as I have had to use mine, and I will suppose that if you ascribe, for instance, oh, $2500 for that simple experience alone you wouldn't be out-of-bounds. Try to relive it. It seems grossly low, but that is a suggestion."

After summing up the 19-day experience in the hospital, counsel stated: "For 19 days he goes through this before he is discharged from the hospital. What of that experience? The reasonable measure of value for those 19 days of lying there and going through this recuperative process, seems to me, that if I suggested $1900 that would be very low. $3800 might be more realistic for 19 days, for this hospitalization for 19 days."

Either orally, or by placing a figure on a blackboard, plaintiff's counsel ascribed a flat suggested amount for the other items. Counsel also told the jury: "Your job is to try to compensate Mr. Baylor and make him whole. The words of the instructions will be; 'To make him whole.' Then figure out what the value of the money would be in placing Mr. Baylor back in the same condition as he was before. I understand it is impossible to do that, *but you can use your own best judgment;* and whatever *I say in this respect you are to understand, please, my inferences will be my thinking and not be yours.* They are values which I ascribe to things and will give to you as guides. I think I can't desert you on this and say, 'Here, it is your problem, it is too hard for me, take it away.' I think I would not be doing my job *if I did not try to make some analysis,*

at least, of the *individual items* of damages that have occurred." (Emphasis supplied.)

Defendant, citing and relying mainly on Boop v. Baltimore & Ohio R.R. Co., 118 Ohio App. 171, 193 N. E. 2d 714, an intermediate Ohio appellate court decision, asserts that it is prejudicial error for counsel to break the damage picture into fragments and then apply to each fragment a mathematical formula by multiplying fixed amounts for small periods of time in order to arrive at an amount for the entire period of expectancy. This is generally characterized in the cases as a "mathematical formula" argument. There is a diversity of opinion in the cases as to the right of counsel to use such an argument. It appears that the weight of authority supports the propriety of such an argument. Bowers v. Pennsylvania R.R. Co. (1960), 182 F. Supp. 756, affirmed, 281 F. 2d 953; Haycock v. Christie (1957), 249 F. 2d 501; Imperial Oil, Limited v. Drlik (1956), 234 F. 2d 4, certiorari denied 352 U. S. 941, 77 S. Ct. 261, 1 L. Ed. 2d 236; Clark v. Hudson (1957), 265 Ala. 630, 93 So. 2d 138; McLaney v. Turner (1958), 267 Ala. 588, 104 So. 2d 315; Vanlandingham v. Gartman (1963), 236 Ark. 504, 367 S. W. 2d 111; Newbury v. Vogel (1963) (Colo.), 379 P. 2d 811; Evening Star Newspaper Co. v. Gray (1962), 179 A. 2d 377; Ratner v. Arrington (1959) (Fla.), 111 So. 2d 82; Corkery v. Greenberg (1962), 253 Iowa 846, 114 N. W. 2d 327; Aetna Oil Co. v. Metcalf (1944), 298 Ky. 706, 183 S. W. 2d 637; Louisville & Nashville Ry. Co. v. Mattingly (1960) (Ky.), 339 S. W. 2d 155; Little v. Hughes (1961) (La.), 136 So. 2d 448; Eastern Shore Public Service Co. v. Corbett (1962), 227 Md. 411, 177 A. 2d 701; Yates v. Wenk (1961), 363 Mich. 311, 109 N. W. 2d 828; Flaherty v. Minneapolis & St. Louis Ry. Co. (1958), 251 Minn. 345, 87 N. W. 2d 633; Boutang v. Twin City Motor Bus Co. (1956), 248 Minn. 240, 80 N. W. 2d 30; Arnold v. Ellis (1957), 231 Miss. 757, 97 So. 2d 744; Four-County Elec. P. Assn. v. Clardy (1954), 221 Miss. 403, 73 So. 2d 144, 44 A. L. R. 2d 1191; Wyant

v. Dunn (1962), 140 Mont. 181, 368 P. 2d 917; Johnson v. Brown (1959), 75 Nev. 437, 345 P. 2d 754; Haley v. Hockey (1950), 199 Misc. 512, 103 N. Y. S. 2d 717; King v. Railway Express Agency, Inc. (1961) (N. D.), 107 N. W. 2d 509; Johnson v. Charleston & Western Carolina Ry. Co. (1959), 234 S. C. 448, 108 S. E. 2d 777; J. D. Wright & Son Truck Line v. Chandler (1950) (Tex. Civ. App.), 231 S. W. 2d 786; A.B.C. Stor. & Mov. Co. v. Herron (1940) (Tex. Civ. App.), 138 S. W. 2d 211; Continental Bus System, Inc. v. Toombs (1959) (Tex. Civ. App.), 325 S. W. 2d 153; Olsen v. Preferred Risk Mutual Ins. Co. (1960), 11 Utah 2d 23, 354 P. 2d 575; Jones v. Hogan (1960), 56 Wash. 2d 23, 351 P. 2d 153. *Contra*: Henne v. Balick (1958), 51 Del. 369, 146 A. 2d 394; Caley v. Manicke (1962), 24 Ill. 2d 390, 182 N. E. 2d 206; Caylor v. Atchison, Topeka & Santa Fe Ry. Co. (1962), 190 Kan. 261, 374 P. 2d 53 (4-3 decision); Botta v. Brunner (1958), 26 N. J. 82, 138 A. 2d 713, 60 A. L. R. 2d 1331; Boop v. Baltimore & Ohio R.R. Co., *supra;* Stassun v. Chapin (1936), 324 Pa. 125, 188 A. 111; Certified TV & Appliance Co. v. Harrington (1959), 201 Va. 109, 109 S. E. 2d 126; Crum v. Ward (1961), 146 W. Va. 421, 121 S. E. 2d 18; Affett v. Milwaukee & Suburban Transp. Corp. (1960), 11 Wis. 2d 604, 106 N. W. 2d 274.

Heretofore, there has been no rule in Nebraska forbidding counsel, in final argument, from equating pain and suffering to time segments within life expectancy, suggesting monetary values for them, multiplying them to reach a final amount, and illustrating such an argument on a blackboard or chart. However, we refrain from passing on this question as it is not presented in this case.

It is apparent from the summarization of the argument given hereinbefore, that counsel suggested flat amounts of recovery for the different areas or categories of pain, suffering, or disability, which different categories or areas bore some real relation to the differences demonstrated in the evidence. Surely, the same pain over a

longer period of time would suggest a larger amount. And, real differing periods of disability, as to quality and time of duration, would warrant an inference of different amounts for each. It is difficult to see how a jury could perform its function as trier of the ultimate facts, unless it gave relative weight to the real differences in pain and disability during different periods, as reasonably reflected by the evidence. This being true, there could be no vice in the simple addition of the amounts allowed for the different periods.

Assuming, but not deciding, that the use of a mathematical formula is error, the gist of the condemned vice is in placing an arbitrary figure on a small time segment period and then multiplying it to reach a final figure. The criticism, if it be valid, is not directed at placing a lump sum dollar amount on any actual different period of pain and suffering which the evidence reasonably supports, but rather at the use of an arbitrary money figure for a time segment and then mathematically multiplying it over the expectancy period, irrespective of what the evidence supports as to any real differences. The plaintiff's counsel in this case did not mention or make use of any money figure arbitrarily selected as representing the value of any minute, day, or week, and then multiply it by formula. As we see it, he argued: (1) The different periods of time the plaintiff had been and would be affected, and (2) the lump sum dollar amount suggested for the loss. It is not the declaration of or the use of a lump sum figure for the different injuries or the periods they are endured that is condemned, but the use of a misleading and nonevidence supported mathematical formula method to reach the lump sum that has been condemned. This distinction is recognized in the authorities, including those cited by defendant. In Affett v. Milwaukee & Suburban Transport Corp., *supra,* quoted at length in the portion of the Boop case, *supra,* relied upon by defendant, it is stated: "Counsel for both the plaintiff and the defend-

ant may make an argumentative suggestion in summation *from the evidence of a lump sum dollar amount for pain and suffering which they believe the evidence will fairly and reasonably support. Counsel may not argue such amount was arrived at or explained by a mathematical formula or on a per day, per month, or on any other time-segment basis.*" (Emphasis supplied.)

The cases denying the use of a mathematical formula have been careful to limit its application, and to specifically point out the propriety of suggesting a lump sum dollar amount. See, Halsted v. Kosnar (1962), 18 Wis. 2d 348, 118 N. W. 2d 864; Caylor v. Atchison, Topeka & Santa Fe Ry. Co., *supra;* Goldstein v. Fendelman (1960) (Mo.), 336 S. W. 2d 661 (argument as to total worth of particular injuries); Caley v. Manicke, *supra* (accepted practice to suggest a total monetary award); Four-County Elec. P. Assn. v. Clardy, *supra.* See, also, 53 Am. Jur., Trial, § 485, p. 392.

Defendant, apparently aware of the fatal missing link in his argument, contends that the division of the suggested lump sums by time units present in the evidence, results in the use of a "mathematical formula." This is an attempt to condemn the lump sum method as a "reverse" mathematical formula. We fail to follow this argument. No authority is cited which condemns a lump sum argument on this basis. It is the arbitrary multiplication forward to reach a false lump sum that has been criticized, not the division back of a lump sum properly suggested. It is clear that counsel for plaintiff studiously avoided suggesting the supposedly fatal original small time segment value for multiplication arbitrarily into the life expectancy period.

Where the evidence discloses real differences in time periods as to quality and intensity of pain and suffering, we fail to see any vice in plaintiff's counsel suggesting lump sums for such periods. If he may suggest a lump amount for the whole case it follows that he should be able to suggest flat amounts for any differ-

ence in time periods that the evidence reasonably reflects. Such differences are before the jury in evidence and to forbid counsel the right to relate such differences in amount would effectively bar him from the right to argue the core issue in any damage case, the amount of money to be awarded.

Defendant contends the verdict of $14,200 is excessive. The amount of damages in cases of this type is not based on any legal rule for measuring them and rests largely in the sound discretion of the jury. It will not be set aside unless so clearly exorbitant as to indicate passion and prejudice or disregard of the evidence or controlling rules of law by the jury. Fridley v. Brush, 161 Neb. 318, 73 N. W. 2d 376. We have already briefly reviewed the evidence as to injuries. The special expenses were $1,779.89. The plaintiff suffered a severe and progressively degenerative injury to his hip. His left leg is weakened and shortened, which will increase as degeneration develops. A crutch or a cane is needed and the motion of the left hip is restricted. He has a general fatigue and system weakness which will not get better. Pain, suffering, and discomfort, in varying degrees, have been the companion of the limited recovery he has achieved. Other injuries to the left knee and collarbone, bruises, and abrasions were present. The plaintiff was active and in good health prior to the accident. His capacity to work has been diminished. The evidence shows these conditions were the result of the accident and not caused by any general debility arising from the defendant's age. A substantially comparable case where this court affirmed a verdict of $16,500 is Fridley v. Brush, *supra*. We think the evidence amply sustains the verdict. There is no merit in this contention.

Defendant contends that instruction No. 3 was in error in stating: "You are further instructed that the burden is upon the defendant in this case to prove by a preponderance of the evidence every material affirmative

allegation in his answer to the plaintiff's petition, * * *.''

In his answer, as submitted by the court in instruction No. 1, defendant alleged negligence on the part of the plaintiff and denominated three categories of conduct on the plaintiff's part that he claimed constituted contributory negligence. He now claims that instruction No. 3 required him to prove all three of these alleged acts of contributory negligence, whereas all he needed to prove was one or more. The above instruction clearly referred to the general burden of proof that was to be placed on the defendant in this respect. The "material affirmative allegation in his answer," alluded to here, is the allegation of the defendant as to the ultimate fact of contributory negligence. This is the only "material affirmative" allegation within the meaning of section 25-843, R. R. S. 1943, which states: "A material allegation in a pleading is one essential to the claim or defense which could not be stricken from the pleading without leaving it insufficient."

At most, the three subdivisional allegations modifying the general charge of contributory negligence were specifications of categories of facts by which the defendant hoped to establish the ultimate material allegation of contributory negligence. The pleading of the three subdivisional fact situations would not be sufficient to raise the issue of contributory negligence, and hence could not be a "material affirmative allegation." The court did not require proof of all affirmative allegations, but only proof (in this respect), of the *material* affirmative allegation" which was the allegation of plaintiff's contributory negligence.

The court's instruction in this respect was in strict conformity with the legal definition of "material allegation" as defined by the statute. The argument is ingenious that it could have misled the jury. But, if the defendant desired clarification, he should have called the court's attention to it by requesting a detailed instruction. Assuming, arguendo, that the instruction was

not sufficiently specific in this respect, it is the duty of counsel to offer requests to supply an omission, and unless this is done, the judgment will not be reversed for such defects. Graves v. Bednar, 171 Neb. 499, 107 N. W. 2d 12; Dorn v. Sturges, 157 Neb. 491, 59 N. W. 2d 751 (citing cases). In this case, the counsel for the defendant not only did not offer an instruction to supply the alleged "omission" but when the court asked him if the instruction No. 3 was "all right the way it is," defendant's counsel responded, "Yes."

The defendant contends that his defense of contributory negligence was not properly submitted because the court in instruction No. 3 told the jury, "Defendant alleges in his answer that the accident and injuries sustained by plaintiff were proximately caused by the careless and negligent acts of the plaintiff * * *." He says that this placed too great a burden of proof on him and did not submit the issue of contributory negligence. There are three answers to this contention. First, the instruction repeated, in almost identical language, defendant's pleading. If the court did not submit the issue of contributory negligence by the use of defendant's own language, then the defendant did not plead it and cannot be heard to complain. Second, instruction No. 10 on comparative negligence fully submitted the issue of contributory negligence and instructed the jury on the exact method of comparison. Third, the court defined contributory negligence as any negligence on the part of the plaintiff *proximately causing or contributing to the accident.* Instructions must be construed together as a whole. This contention is without merit.

Defendant complains of error in submitting "loss of earning capacity," as one of the elements of damage in instruction No. 11. He says that no loss of past earnings was proved, and none was pleaded. He further states that the proof was insufficient to warrant submission of this element.

Loss of earning capacity, as distinct from loss of wages,

salary, or earnings, is a separate element of damage. Loss of earnings is an item of special damage, and must be specifically pleaded and proved.

On the other hand, impairment of earning capacity is an item of general damage and proof may be had under general allegations of injury and damage. Jacobsen v. Poland, 163 Neb. 590, 80 N. W. 2d 891; Carlile v. Bentley, 81 Neb. 715, 116 N. W. 772; Wilson v. Sorge, 256 Minn. 125, 97 N. W. 2d 477; Klingbeil v. Truesdell, 256 Minn. 360, 98 N. W. 2d 134. Proof of an actual loss of wages or earnings is not essential to a recovery for loss of earning capacity. Hrabak v. Hummel, 55 F. Supp. 775, affirmed 143 F. 2d 594, certiorari denied, 323 U. S. 724, 65 S. Ct. 57, 89 L. Ed. 582; Riddel v. Lyon, 124 Wash. 146, 213 P. 487, 37 A. L. R. 486.

The proper distinction between the two elements of damage and the factors involved in the proof of loss of earning capacity is well stated in a case cited by the defendant, Klingbeil v. Truesdell, *supra,* wherein it is said: "The apparent difficulties encountered in proving diminution of earning capacity have now been largely solved by our decision in Wilson v. Sorge, 256 Minn. 125, 132, 97 N. W. 2d 477, 483, where we noted that impairment of earning capacity is an item of general damages. 'It permits recovery for a loss or diminution of the power to earn in the future and is *based upon such factors as the plaintiff's age, life expectancy, health, habits, occupation, talents, skill, experience, training, and industry.* It is within the province of the jury to weigh all these elements and, guided by experience and common sense, to arrive at the proper monetary *value of plaintiff's loss without recourse to his past earnings.'*" (Emphasis supplied.) See, also, Riddel v. Lyon, *supra;* Hrabak v. Hummel, *supra;* Zaikaner v. Small, 256 Minn. 275, 98 N. W. 2d 247; Lieberman v. Korsh, 264 Minn. 234, 119 N. W. 2d 180.

It being unnecessary to plead or establish an actual loss of earnings to recover for loss of earning capacity,

we briefly allude to the evidence as to its sufficiency. Besides the general weakness, fatigue, discomfort, and pain the plaintiff has suffered, there is ample evidence in the record as to plaintiff's age, life expectancy, health, habits of work that have been interfered with, his talents, skill, training, experience, and industry. Most of these factors have been affected by the injury, including additional evidence that he can work and concentrate only a little more than half the time he did before, and that his ability to perform certain specialized work has been impaired. These factors of loss of earning capacity are incapable of exact measurement and the fact that they are difficult to ascertain should not be a bar to recovery. Jacobsen v. Poland, *supra.*

We therefore hold that loss of earning capacity was properly submitted, that loss of earnings was not necessary to be pleaded or proved, and that the proof was sufficient as to the required factors establishing loss of earning capacity.

We note also that proof was offered as to plaintiff's prior earnings, and on objection of the defendant, the court excluded this testimony. Defendant cannot now complain of a claimed defect in proof which was produced at his request. 3 Am. Jur., Appeal and Error, § 879, p. 432; Huddleson v. Polk, on rehearing, 70 Neb. 489, 100 N. W. 802.

Lastly, defendant contends error in instruction No. 12 relating to the damage element of anxiety or "mental suffering." By instruction No. 11, the court submitted this issue and cautioned the jury that: "Damages for future pain and suffering, *mental or physical,* * * * must be based upon competent evidence that *such damages are clearly shown and reasonably certain as a* proximate result of the injuries; * * *." (Emphasis supplied.)

The evidence shows that the plaintiff was informed by his surgeon that his operation might not be successful and was thereafter advised and informed that deterioration of his hip might come any time within 5 years. And

the evidence showed at the time of the trial that the hip was in a progressive state of deterioration. The court, in an explanatory instruction No. 12, stated: "You are instructed that certain evidence has been received in this case to the effect that plaintiff was advised by his physician as to the possibility that the condition of his hip might deteriorate or become worse following his operation and as to the possibility of another operation becoming necessary. This evidence was received by the court and should be considered by you, not for the purpose of establishing the truth of the statements recited in such evidence but merely for the limited purpose of forming a basis for mental suffering, if any such you find, and for no other purpose."

Defendant's main contention is that recovery for anxiety can only be had when it reasonably results or is reasonably apprehended as a result of his injuries, and that the language used submits the issue in terms of conjecture and possibilities. We do not agree. Construing the two instructions together, it is clear that instruction No. 11 submitted the issue of anxiety to the jury, and required that it be shown with reasonable certainty to have resulted from the injuries. Instruction No. 12 was a cautionary instruction, which, in effect, carefully limited the scope of the medical testimony in this respect. The jury could find that it was entirely reasonable, in the light of the doctor's advice, that the plaintiff would undergo anxiety and mental suffering. Further progressive deterioration of the hip actually developed. These instructions, when construed together, told the jury: (1) That his anxiety or mental suffering must have a reasonable basis, and (2) that the evidence with relation to the doctor's advice as to "possibilities" could only be considered with relation to the determination of a reasonable basis for the anxiety and mental suffering, and for no other purpose. Medical science cannot in all cases predict the prognosis of an injury or disease. Advice by a physician of *this fact*

may reasonably lead to anxiety. Disclosure by a physician that a wound "might" develop into cancer is a reasonable basis for a patient to have anxiety about the possibility of developing cancer, and is recoverable in damages. Ferrara v. Galluchio, 5 N. Y. 2d 16, 152 N. E. 2d 249, 71 A. L. R. 2d 331.

We have examined other contentions as to instruction No. 12 and they are without merit. We have examined the whole record in this case and it reveals that the defendant was accorded a full and fair trial. The record is without prejudicial error and the judgment is affirmed.

AFFIRMED.