HARRY L. FRIDLEY, APPELLEE, v. E. L. BRUSH, FIRST AND REAL NAME UNKNOWN, APPELLANT.

73 N. W. 2d 376

Filed December 2, 1955. No. 33756.

*Neely, Otis & Neely*, for appellant.

*George B. Boland* and *Robert D. Mullin*, for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action brought by Harry L. Fridley, plaintiff, in the district court for Douglas County against E. L. Brush, defendant, to recover damages resulting from injuries allegedly caused by the defendant. There was a trial to a jury resulting in a verdict and judgment in favor of the plaintiff for $16,500. From the order overruling a motion for new trial and order overruling a motion for judgment notwithstanding the verdict, the defendant has appealed.

For convenience the parties will be referred to as designated in the district court.

The plaintiff's petition alleged that the injuries and damages occasioned to the plaintiff were the direct and proximate result of the negligence of the defendant in the following particulars: (a) In operating his automobile at a high, dangerous, and excessive rate of speed, greater than was reasonable and proper taking in consideration the highway, the use of the highway, the condition of the highway, and the traffic thereon, and at a rate of speed in violation of the statutes of the State of Nebraska; (b) in failing to keep a proper lookout for traffic and especially the automobile and the person of the plaintiff; (c) in failing to change, alter, or divert

the course of his automobile and to avoid colliding with the plaintiff; (d) in failing to sound any signal or warning of his approach; (e) in failing to have his automobile under proper control; (f) in driving his automobile at such a rate of speed in the nighttime so that he could not bring it to a stop within the area lighted by his headlights; and (g) in failing to seasonably apply his brakes and to bring his automobile to a stop before colliding with the plaintiff.

The defendant's answer was a general denial of the allegations of negligence pleaded in the plaintiff's petition. In addition it alleged that the collision was the direct and proximate result of the negligence of the plaintiff in stopping his automobile on a heavily-traveled highway after sundown without exhibiting white and red lights visible from a distance of 500 feet to the rear as required by the statutes of Nebraska.

Defendant's counterclaim alleged that he was driving his automobile in an easterly direction on what is known as the Dodge Street highway on December 1, 1953, at 5:30 p. m.; that he had proceeded down a hill located about 3 miles west of the city limits of Omaha, traveling at approximately 30 miles an hour; that the night was dark and it had been misting, so that the highway was wet; that the plaintiff had stopped his automobile a short distance from the bottom of an incline directly in the path of the defendant's car; that the color of the plaintiff's automobile was similar to that of the road, and by reason of that fact, coupled with its position on the highway on an upgrade a short distance from the bottom of a hill, defendant was unable to see plaintiff's automobile until he was only a short distance away from it; that as soon as the plaintiff's automobile became visible, defendant turned his automobile sharply to the left and applied his brakes in an effort to avoid a collision; that the right front of the defendant's car struck the left rear corner of the plaintiff's automobile, damaging defendant's car without fault on defendant's

part; and that the damage occasioned to defendant's automobile was the direct and proximate result of the negligence of the plaintiff. Defendant prayed for damages sufficient to reimburse the defendant for the money expended in repairing his automobile.

Plaintiff's reply to defendant's answer was in effect a general denial of all the allegations contained therein which were not admissions of plaintiff's petition, and a specific denial of the affirmative defense pleaded in defendant's answer. Plaintiff's answer to defendant's counterclaim was in effect a general denial of the allegations contained therein.

The testimony discloses that a highway marker sign designating U. S. Highways Nos. 6 and 275 is in the vicinity where the accident occurred, and that the highway above mentioned is commonly referred to as the West Dodge Street highway. This highway consists of four vehicular lanes, with the paved portion 42 feet wide. Through the center of the paving there is a black line. There is a distance of 21 feet on the north and south sides of the black line indicating the traveled portions of the highway for vehicular travel east and west. The highway marker sign is approximately 485 feet up an incline which begins approximately one and one-half blocks west of the point of impact. The grade of the incline where the accident occurred is 2 percent for the first 100 feet, 4 percent for the next 100 feet, and then increases to 6 percent as the incline continues upward to the east.

On both sides of the highway in close proximity to the point of impact are several billboard signs with electric lights on them which light up the highway.

The plaintiff testified that he was 70 years of age and employed as a salesman to hustle freight for the McMaken Transportation Company; that he owned a 1948 Nash sedan, gray in color; and that in his business he used the company's 1946 Nash, the top part of which was gray and the lower part of the body red. We will

hereafter refer to these Nash cars as the family car and the company car. His daughter kept house for him, and was employed at Boys Town. About 5 p. m., the evening of December 1, 1953, his daughter telephoned to inform him that the family car which she was driving had stalled on the highway. The plaintiff took the company car to go to his daughter's assistance. He drove the company car up behind the family car and proceeded to push it about three-fourths of a mile east on the highway, bumper to bumper. As he pushed the family car up the incline, his tires commenced to slip because the pavement was "a little bit wet" as it had previously been misting. The company car was getting "a little hot" from the pushing, so he stopped, with one right wheel of the car on the right shoulder of the pavement, to let the motor cool. His intention was to push the family car east to the first crossroad where they could get it off the highway. He got out of the company car, and went up to talk to his daughter and question her about the first place where they could turn off the highway. He then went back to the company car and endeavored to get the left front door of the car open. During the time that he was stopped, which he estimated to be about 5 minutes, four or five cars and one truck passed, going east. His daughter testified, however, that he was stopped only from a minute to a minute and a half. As he was trying to open the door he saw a car approaching at a distance of about 75 feet to the west, or rear, of the company car. He was standing on the north side of the company car. The approaching car was in the south lane of travel, that is, the driving lane. He estimated the speed of the approaching car, which was coming straight at him, at 40 miles an hour. This car, driven by the defendant, continued east right into the rear of the company car, and swerved slightly to the left or north just prior to the impact. The right front of the defendant's Packard car struck the left rear part of the company car dam-

aging both cars and the family car. At the moment of impact the plaintiff had his hand on the door of the company car. The force of the impact threw him to the pavement.

The plaintiff's daughter testified that she started home from Boys Town about 4:30 p. m. in the family car. The car stalled on the Dodge Street highway. She telephoned her father who came out in the company car. He tried but could not get the family car started, and then proceeded to push it from behind with the company car. When it was pushed about a mile, the company car was in trouble, so her father stopped and inquired of her if a turn could be made to get the cars off the highway. When he got back to the company car, the accident occurred. She felt the force of the impact of the Packard car striking the company car. It knocked her against the steering wheel and moved the family car possibly a foot or so to the east. She got out of the family car and went to her father's assistance. The side of the Packard car was up against the left rear side of the company car. Her father was pinned underneath the Packard car, laying with his face down and his head to the east, with the fender and part of the bumper of the Packard car over his legs up above his hips. Plaintiff was extricated from this position and put into the company car. She further testified that she saw the defendant immediately after the accident. He got out of his car and said: "This is a terrible thing to happen. I will be late now for my dinner engagement in Omaha."

The record also shows that the family car and the company car were equipped with the customary headlights in front, and three red lights across the back of each car, that is, in the middle of the trunk there was a light and one on each rear fender. The plaintiff and his daughter testified that before, at the time of, and after the accident the front headlights on both Nash cars were on; that the red taillights were lighted on

both cars; and that it was dark. Plaintiff's daughter also testified that there were half a dozen or more billboard signs with lights on in the vicinity of the accident and "it seemed very light."

The defendant testified that he was 75 years of age and a physician at Norfolk; that on December 1, 1953, he left his home, accompanied by his wife, to visit their son in Omaha; that he was familiar with the Dodge Street highway and had driven over it both day and night on several occasions; that he came from Fremont on Highway No. 275; and that as he came to the Dodge Street highway he slowed his car down to 30 miles an hour. The first thing he noticed on the highway was when the lights of his car shone upon a man standing on the highway by a car approximately 20 feet ahead of him. His wife said: "There's a man!" and they both said: "There's a car." They had noticed him at the same time. The defendant then tried to slow his car to miss the Nash car directly ahead of him and also the man, and endeavored to turn left, or northeast, and made an effort to apply his brakes but was unable to stop the car in time to avoid colliding with the car ahead of him. As a result, his car pushed the Nash car which knocked the plaintiff down. Both Nash cars were in the driving lane of the highway right up against each other. After the impact the Nash car he struck was in the first lane of travel and the Packard car in the second lane of travel headed east, and very close to the second Nash car. The highway was very wet. It was misty, and visibility was low. After the defendant got out of his car, the plaintiff and his daughter were standing up beside the Nash car. The plaintiff said it felt like his leg was broken. The defendant then opened the car door and the plaintiff was put into the company car. The defendant examined the plaintiff's leg and informed him of the nature of the injury.

On cross-examination the defendant testified that his car was equipped with hydraulic brakes which were

functioning in perfect order. He was unable to tell how far the beam of his headlights would show ahead. He was familiar with the weather condition at the time, and the heavy volume of traffic on Dodge Street highway. He recalled the lighted Giovanni billboard on the south side of the highway in close proximity to the point of impact. He further testified that he was coming down a hill and the Nash cars of the plaintiff were up on the other side of another hill, and the lights of the defendant's car were in a position so that he did not see the cars until he started up the hill. He saw the plaintiff standing in the highway just as his car started up the hill. There were no other cars ahead of him to block his view of the plaintiff or the Nash cars. His windshield wipers were working at the time of the accident. However, in a statement given by the defendant in the presence of a court reporter 3 days after the accident, he could not recall whether the windshield wipers were working or not. He did not recall sounding his horn at the time of the accident. He did not see lights on the rear of the Nash car ahead of him, and did not see anything until his lights showed the man standing in the highway at the back end of the Nash car. Defendant's Packard car was equipped with regular two-beam lights, and he was driving with the high beam when he first saw the plaintiff.

The defendant's wife testified that all she recalled was seeing a man and a car at the time of the impact. She did not recall seeing any lights on the cars. She remained in the car after the accident. It did not seem to her that the car traveled any distance after the collision. The headlights on the Packard car were lighted, the night was dark, the sky was overcast, and it had been drizzling and raining. They were driving in the south lane on Dodge Street to enable them to turn off when they reached the street leading to their son's home, which was to the south. The man looked as though he was standing beside his car toward the rear of it, facing to-

ward the west. She testified that the defendant had slowed down to probably 30 to 35 miles an hour. She was unable to tell how far ahead the headlights on the defendant's car would reveal an object.

A deputy sheriff arrived at the scene of the accident about 10 p. m. and took several pictures which were received in evidence as exhibits. He testified that there was a slight drizzle, it was not foggy, nor was there enough moisture in the air to reduce visibility. The highway was slightly damp and would be somewhat slippery.

A state safety patrolman testified that he received a call on the date of the accident about 5:45 p. m.; that when he arrived, he noticed that the two Nash cars were jammed together in the southernmost lane of the highway; that the Packard car was out in the passing lane; and that these vehicles were in the vicinity of the U. S. Highway markers 6 and 275. He further testified that it was dark at the time of the accident; that the pavement was still wet; that prior to the time of the accident it had been misting; and that the red lights on the back end of the Nash car that was struck were on. He talked to the defendant who told him that he was going 40 miles an hour at the time of the accident, and said he tried to avoid it as soon as he realized he was in difficulty but was unable to do so. On cross-examination he testified that it was a "nasty" evening, cloudy, and visibility was "not too good."

The defendant predicates error on the part of the trial court in giving instructions Nos. 4, 5, 6, 7, 10½, and 11 to the jury.

In considering the above assignments of error, it must be borne in mind that instructions given by the trial court to a jury must be construed together and considered as a whole to ascertain whether or not they properly state the law applicable to the case.

Instruction No. 4 reads: "The Court finds as a matter of law that the proximate cause of the accident was

negligence on the part of the defendant, in whole or in part, in those respects charged against the defendant in the petition at Instruction No. 1, and to an extent to defeat the defendant's recovery on his counterclaim. You are, therefore, directed to return a verdict for the plaintiff on the defendant's counterclaim."

The defendant contends that the use of the article "the" before the words "proximate cause" would mean the negligence of the defendant was the sole and only cause of the accident, and that to properly instruct the jury, the article "a" should have been used before the words "proximate cause" which would mean one or more of the elements of negligence on the part of the defendant.

Instruction No. 4 relates only to the defendant's counterclaim. There is a qualifying phrase in the instruction as follows: "in whole or in part." The qualifying phrase conveys the meaning that the defendant was guilty of negligence sufficient to bar his recovery on his counterclaim, and that such negligence on the part of the defendant amounted to either a portion of the proximate cause of the accident or, in the alternative, constituted the sole proximate cause and, as stated above, this instruction should be considered and construed with all the other instructions in the case.

In connection with instruction No. 4, the defendant then makes reference to instruction No. 5, which reads as follows: "The burden is upon the plaintiff to establish by a preponderance of the evidence the nature and extent of his injuries and the amount of his loss all as proximately caused by negligence on the part of the defendant.

"If the plaintiff has so established such proposition by a preponderance of the evidence your verdict will be for the plaintiff, unless you find the plaintiff himself to have been negligent to an extent to defeat his recovery, as herein elsewhere stated. If the plaintiff has failed to establish such proposition by a preponderance of the

evidence your verdict will be for the defendant."

The defendant's contention is that the phrase "all as proximately caused by negligence on the part of the defendant," as used in instruction No. 5 given immediately after instruction No. 4, could only be construed to mean that the proximate cause of the accident was the negligence of the defendant; that after the plaintiff had satisfied the jury of the nature and extent of his injuries and the amount of his loss, a verdict for the plaintiff must follow; and other instructions given by the trial court thereafter would not restore the defendant's right to have the jury consider the contributory negligence of the plaintiff, if any.

The last paragraph of instruction No. 5 informed the jury that it could return a verdict for the defendant if the plaintiff failed to prove his case by a preponderance of the evidence, or if the plaintiff himself was guilty of more than slight negligence. It is a proper instruction.

Instruction No. 6 reads: "Negligence is not presumed but must be proved. The defendant having alleged that the accident was proximately caused by negligence on the part of the plaintiff or his contributory negligence, the burden is upon the defendant to establish any such negligence or contributory negligence and that the same was the proximate cause of or proximately a contributing cause to the accident."

The defendant contends that instruction No. 6 is incomplete. The effect of the instruction is to inform the jury that the question of the plaintiff's contributory negligence was in issue; and that the burden was on the defendant to establish any such negligence or contributory negligence and that the same was the proximate cause of or proximately a contributing cause to the accident. This instruction, under the circumstances, was proper.

Instruction No. 7 reads: "In determining any issue under the pleadings or evidence you should consider all the evidence submitted and not only that of the side

which happens to have the burden of proof. If any evidence of the other side tends to establish a fact required to be established by a preponderance of the evidence, the one who has the burden of proof shall have the advantage of it."

The defendant contends instruction No. 7, wherein appears the general statement "In determining any issue under the pleadings or evidence you should consider all the evidence submitted," is not in compliance with the rule announced in Mundy v. Davis, 154 Neb. 423, 48 N. W. 2d 394. In the cited case we said: "If the defendant pleads that the plaintiff was guilty of contributory negligence the burden is upon him to prove that defense and this burden does not shift during the trial of the case. However, if the evidence adduced by the plaintiff tends to prove that issue the defendant is entitled to receive the benefit thereof and the court must instruct the jury to that effect." See cases cited in Mundy v. Davis, *supra*.

As we view instruction No. 7, it conforms precisely to the type of instruction indicated in Mundy v. Davis, *supra*, on this subject and is a proper instruction.

Instruction No. 10½ reads: "In determining the degree of negligence of the defendant you should consider the visibility of plaintiff and his car and whether or not the lights on the rear of the car plaintiff had driven were lighted and all other facts and circumstances in evidence affecting the car's visibility, what the defendant could and should have been able to see and do in the exercise of ordinary care, the speed at which he was traveling, and all other facts and circumstances relating to these subjects."

The defendant contends the above instruction told the jury, by implication, that the defendant was guilty of negligence. This instruction refers to certain evidence adduced that the jury might consider in determining the degree of defendant's negligence with relation to the rule of comparative negligence, and must

be considered and construed with all the other instructions in the case. We find no prejudicial error in the giving of this instruction.

Instruction No. 11 given by the trial court was the standard instruction on comparative negligence. It conforms to the comparative negligence statute. The defendant argues the inapplicability of this instruction in the light of what the court informed the jury in instruction No. 4 which we have previously analyzed, and needs no further discussion. Instruction No. 11 was properly given.

Instruction No. 9 set forth the definitions of "negligence" and "contributory negligence" as well as the phrases "proximate cause," "preponderance of the evidence," and "ordinary care."

Instruction No. 10 related to the statutes of Nebraska which apply to the case under the pleadings and the evidence.

Instruction No. 13 related to the measure of damages in the event the plaintiff was entitled to recover. In this instruction the jury was also informed that if it should find the plaintiff to have been negligent proximately contributing to cause the accident but not to an extent to defeat his recovery, the jury would then reduce the amount of his recovery in the proportion which plaintiff's negligence bore to the total negligence in the case; that in the event the jury should find for the defendant it should simply say so by its verdict; and in any event, the jury was to find for the plaintiff and against the defendant on the defendant's counterclaim. The part of the instruction referred to above again made possible a finding by the jury that plaintiff's contributory negligence, if any, might bar plaintiff's right to recover, or might proportionately reduce the amount he was possibly entitled to recover.

The defendant contends it is the duty of the trial court, without request, to submit to and properly instruct the jury upon all the material issues presented

by the pleadings and the evidence. The defendant asserts that all the specific acts of negligence were not contained in the defendant's answer, for the reason that they were not known until they were adduced by the evidence of the plaintiff and other witnesses at the time of trial.

The defendant did not apprise the trial court nor make application to amend his answer or counterclaim to conform to what he claimed the evidence disclosed to be the specific acts of negligence on the part of the plaintiff that should be charged in such pleadings.

The defendant, in his answer, alleged that "the collision was the direct and proximate result of the negligence of the plaintiff in stopping his automobile on a heavily traveled highway after sundown without exhibiting white and red lights visible from a distance of 500 feet to the rear, as required by the statutes of Nebraska," and further alleged that "plaintiff's negligence was more than slight, and sufficient to bar recovery herein." This specific charge of contributory negligence was submitted to the jury for its consideration.

Krepcik v. Interstate Transit Lines, 153 Neb. 98, 43 N. W. 2d 609, is cited by the defendant. In this case the trial court instructed the jury on the basis of specifications of defendant's negligence claimed by plaintiff in the petition and supported by the evidence, but the trial court neglected to specify the charges of contributory negligence pleaded in the defendant's answer with particularity and supported by proof. We said: "It is the uniform and proper practice in this state that where specific acts of negligence are charged and supported by the evidence, the trial court instructs as to the specific acts so alleged and supported. It necessarily follows that where specific charges of contributory negligence are pleaded and supported by proof the instructions should submit those specific charges to the jury for its determination." It is apparent that the requirement

is that such specific charges must be both pleaded and supported by proof.

Mundy v. Davis, *supra*, is cited in support of the proposition that the trial court should have specifically submitted the several elements of contributory negligence. An examination of the above case shows that defendant Davis made general, rather than specific, allegations of contributory negligence by the plaintiff, and that the plaintiff, Mundy, took no action to require the defendant to specify with exactness the acts of alleged contributory negligence upon which he was relying.

It is true that under a general allegation of contributory negligence the trial court should instruct the jury as to any such negligence which might be supported by the evidence. That is not the situation here, as pointed out above, and the defendant cannot prevail in this contention.

There are certain well-established rules relating to instructions that are applicable to the instructions complained of in the instant case.

"The true meaning of instructions is to be determined not from a separate phrase or paragraph, but by considering all that is said on each subject or branch of the case." Roberts v. Carlson, 142 Neb. 851, 8 N. W. 2d 175.

"The meaning of an instruction, not the phraseology, is the important consideration, and a claim of prejudice will not be sustained when the meaning of an instruction is reasonably clear." Brown v. Hyslop, 153 Neb. 669, 45 N. W. 2d 743.

"An instruction will not be held to be prejudicially erroneous merely because of a harmless imperfection which cannot reasonably be said to have confused or misled the jury to the prejudice of the party complaining." In re Estate of Kinsey, 152 Neb. 95, 40 N. W. 2d 526.

If an examination of all the instructions given by the trial court discloses that they fairly and correctly state

the law applicable under the evidence, error cannot be predicated thereon. See Blanchard v. Lawson, 148 Neb. 299, 27 N. W. 2d 217.

Having examined the record and all of the instructions given by the trial court, we conclude that they fairly and correctly state the law applicable to the evidence, and that error cannot be predicated thereon. Gallagher v. Law, 135 Neb. 381, 281 N. W. 806.

The defendant asserts that when a person standing or walking on a public highway at night is struck by a motor vehicle, the question of the defendant's negligence, if· any, and the contributory negligence of the plaintiff, if any, are questions to be determined by the rules of ordinary care. In support thereof the defendant cites Brenning v. Remington, 136 Neb. 883, 287 N. W. 776; Carlson v. Roberts, *supra;* Grantham v. Watson Bros. Transp. Co., 142 Neb. 362, 6 N. W. 2d 372; and White v. Edwards, 222 Mich. 321, 192 N. W. 560. Suffice it is to say that the factual situations in the cited cases are not analogous to those in the instant case and they are not in point here.

Due consideration of all the facts reflected by the evidence in the instant case leads to the inevitable conclusion that at the time of the accident the plaintiff was lawfully on the pavement where he was standing, and his position was open to view of the approaching cars. He had a right to rely on reasonable care on the part of automobile drivers thereof. Any person using the highway was bound to take notice of him and to use care not to injure him, and the plaintiff had a right to assume that this would be done. The issue of the plaintiff's contributory negligence was submitted to the jury for its consideration.

The defendant makes reference to the general rule and the exceptions thereto, and contends that the same apply to him under·the facts and circumstances of the instant case. The general rule and the exceptions thereto are shown by the following authorities.

"As a general rule it is negligence as a matter of law for a motorist to drive an automobile on a highway in such a manner that he cannot stop in time to avoid a collision with an object within the range of his vision." Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250. See, also, Buresh v. George, 149 Neb. 340, 31 N. W. 2d 106.

The basis of this rule is that a driver of an automobile is legally obligated to keep such a lookout that he can see what is plainly visible before him and that he cannot relieve himself of that duty. And, in conjunction therewith, he must so drive his automobile that when he sees the object he can stop his automobile in time to avoid it. Buresh v. George, *supra;* Mundy v. Davis, *supra.*

In Mundy v. Davis, *supra,* we said, quoting from Fairman v. Cook, 142 Neb. 893, 8 N. W. 2d 315:  " '* * * the existence or presence of smoke, snow, fog, mist, blinding headlights or other similar elements which materially impair or wholly destroy visibility are not to be deemed intervening causes but rather as conditions which impose upon the drivers of automobiles the duty to assure the safety of the public by the exercise of a degree of care commensurate with such surrounding circumstances. Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825; Fischer v. Megan, 138 Neb. 420, 293 N. W. 287.' "

In Haight v. Nelson, 157 Neb. 341, 59 N. W. 2d 576, referring to the general rule requiring a motorist to stop within the range of his lights, we said: "We have qualified or made exceptions to the rule hereinbefore set out. In Buresh v. George, supra, we said: 'However, on unlighted streets and highways, and those lighted but where the light is obstructed, we have made exceptions to this general rule when the nature of the object or its condition, such as color, dirt, et cetera, in relation to the highway or road, affected its immediate visibility or when, because of the lights of oncoming

traffic, the driver's attention is distracted or his vision impaired and his opportunity for immediate discernment thereby affected. In such cases we have held that the issue of the driver's negligence, if any, and the degree thereof is for the jury.'"

It is the defendant's contention in the instant case that the evidence brings this case within the exceptions to the general rule.

In Murray v. Pearson Appliance Store, *supra,* this court said: "The driver of a motor vehicle has the duty to keep a proper lookout and watch where he is driving even though he is rightfully on the highway and has the right-of-way or is driving on the side of the highway where he has a lawful right to be. He must keep a lookout ahead or in the direction of travel or in the direction from which others may be expected to approach and is bound to take notice of the road, to observe conditions along the way, and to know what is in front of him for a reasonable distance."

In the instant case, the accident occurred at a point 485 feet up a long, gradual incline. There is no evidence that the Nash car which was struck by the defendant's car was dirty or begrimed with oil, or in any manner, by its color or otherwise, blended with the pavement. It was admitted that the Nash car which the plaintiff had been driving was stationary in the vicinity of numerous large billboards which were lighted, and these lights illuminated the highway. The defendant's testimony discloses that there was no object between his car and the two Nash cars standing stationary on the highway which prevented him from seeing them. In addition there were three lanes of traffic to the north of where the Nash cars were stationary and to the north of the defendant's car. There was sufficient space for the defendant to have used the passing lane to avoid striking the Nash cars. There is little dispute, if any, in the evidence that both headlights and taillights on the stationary Nash cars were showing. The defendant

said his visibility was diminished because of mist in the air. However, he was well aware of this condition long before the accident occurred. He had no idea whatsoever as to the distance which his headlights shown ahead of him under the circumstances existing at the time, nor the extent of his visibility, nor the distance in which he could stop his car at an admitted rate of speed of 30 miles an hour right up to the point of impact.

It must be concluded that under the evidence and the circumstances existing here, the facts do not bring this case within the exceptions of the general rule, and the trial court did not err in finding, as a matter of law, that the defendant was guilty of negligence.

The defendant complains that the verdict of the jury was excessive. In this respect, the evidence shows that plaintiff's right leg began to pain him immediately after the accident, and he was hospitalized. His kneecap was moved upward 4 or 5 inches above its regular position. An orthopedic surgeon, upon examination, found the knee to be greatly swollen, and there was considerable bleeding in the joint. There was an avulsion of the patellar tendon which goes from the kneecap down to the shin bone. The plaintiff was unable to straighten his right leg. The left leg was bruised and contused. An operation was performed which resulted in a shortening of the tendon. The plaintiff was placed in a plaster cast from ankle to hip, which he wore approximately 3 months. He used crutches with difficulty, and at the time of trial was suffering pain in his right knee and leg to the extent that injections of hydracortisone were given in an attempt to control the pain. The operation left a scar approximately 5 inches in length. The doctor testified that there was pain and limitation of motion in the plaintiff's right leg, and that plaintiff had suffered 15 percent permanent disability and would be disabled to that extent for the rest of his life. The plaintiff had reached the maximum recovery at the

time of trial and could hope for no further improvement. His doctor bills were in excess of $400 at the time of trial. He walked with a limp, and would continue to do so for the rest of his life. His earning power had been diminished.

The defendant offered no evidence to contradict the foregoing evidence as to the nature and extent of the plaintiff's injuries.

"The law gives to the jury the right to determine the amount of recovery in cases of personal injury. That is, of course, one of its functions, and, if the verdict is not so disproportionate to the injury as to disclose prejudice and passion, it will not be disturbed." Dailey v. Sovereign Camp, W. O. W., 106 Neb. 767, 184 N. W. 920.

"A verdict may be set aside as excessive only when it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or that it is clear that the jury disregarded the evidence or controlling rules of law." Remmenga v. Selk, 152 Neb. 625, 42 N. W. 2d 186.

In Sutton v. Inland Const. Co., 144 Neb. 721, 14 N. W. 2d 387, we said: "No method of exact computation can be devised in determining compensatory damages in cases of this kind. We think the evidence was such that the jury could properly arrive at the amount determined upon by them. We can find no yardstick whereby we can say as a matter of law that the verdict was excessive. Under such circumstances this court may not substitute its judgment for that of the jury, even if it be assumed that this court would determine that a lesser amount would constitute adequate compensation for the injuries sustained." See, also, Horky v. Schroll, 148 Neb. 96, 26 N. W. 2d 396; Rueger v. Hawks, 150 Neb. 834, 36 N. W. 2d 236; Thoren v. Myers, 151 Neb. 453, 37 N. W. 2d 725; Peacock v. J. L. Brandeis & Sons, 157 Neb. 514, 60 N. W. 2d 643. This assignment of error cannot be sustained.

We find no error in the record prejudicial to the rights

of the defendant, therefore the judgment of the trial court should be and is hereby affirmed.

AFFIRMED.