THOMAS ZAWADA, APPELLEE, V. MICHAEL BRIAN ANDERSON
ET AL., APPELLANTS.
149 N. W. 2d 329

Filed March 10, 1967.   No. 36375.

Rickerson & Homan, for appellants.

Warren C. Schrempp, J. William Gallup, and Levin & Gitnick, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and WEAVER, District Judge.

WHITE, C. J.

This is a car-pedestrian accident occurring at 6:30 p.m., August 7, 1963, in the east crosswalk of the intersection of St. Mary's Avenue and Park Avenue in Omaha, Nebraska. Plaintiff recovered a jury verdict and judgment of $18,867. Defendants appeal.

Defendants' first contention is that the plaintiff was guilty of contributory negligence as a matter of law. In resolving this question plaintiff is entitled to have all conflicts in the evidence and reasonable inferences resolved in his favor. St. Mary's Avenue, 50 feet wide, is a westbound, four-lane, one-way street with a pedestrian crosswalk on the east side where it intersects Park Avenue, and is controlled by automatic signals. Plaintiff was walking south on the east side of Park Avenue, came to the intersection, entered the crosswalk on the green light, and observed that there were two cars stopped to his left in the two northernmost traffic lanes on St. Mary's Avenue. He proceeded in the crosswalk across the intersection. Halfway across he observed the green light still in his favor. Another car, driven by the witness Mino St. Lucas, was approaching in the third lane. St. Lucas saw the plaintiff about two car lengths from the crosswalk, and stopped his car about a car length away to permit him to cross. The defendant, Michael B. Anderson, was approaching in the fourth or southernmost lane of traffic immediately to the left and south of the Mino St. Lucas car. Plaintiff, after observing the green light halfway across the intersection, proceeded on across, looked to the left again and saw defendant Michael B. Anderson's car when it was about

15 or 20 feet from him. He was between 4 and 10 feet from the south curb when struck on the left hip by the left front end of defendant's vehicle. He was thrown 26 feet to the southwest by the impact. There is testimony to the effect that the plaintiff quickened his pace or ran a few steps just before the impact occurred. Plaintiff's testimony is to the effect that after seeing defendants' vehicle he continued walking. Defendant driver never saw plaintiff until the impact, never slackened his speed or applied his brakes prior to impact, and traveled 40 feet across the intersection before stopping. His speed was 20 to 25 miles per hour, and he testified he had the green light from about half a block back.

Defendants argue that plaintiff was guilty of contributory negligence as a matter of law in moving from a place of safety into the path of danger of defendant's vehicle. We do not agree. In a literal sense, we suppose any pedestrian involved in a collision with a vehicle at an intersection crosswalk has moved from a place of safety into the path of danger at some point during the crossing. The more precise question is whether, as a matter of law, plaintiff was negligent in not seeing defendants' vehicle sooner than he did, or not taking steps by stopping or otherwise, to avoid the collision. He first saw defendants' vehicle when it was 15 to 20 feet to the east of him. The applicable ordinances of the City of Omaha gave plaintiff the right-of-way on the crosswalk, this right-of-way continued until plaintiff had finished his crossing, and the ordinances required defendant driver to yield the right-of-way and not to pass any car stopped for the passage of pedestrians. In this case there were at least two cars stopped and one slowing down or stopped for the passage of the plaintiff who was in plain sight on the crosswalk. Plaintiff entered the crosswalk on the green light, looked to the east, and saw two cars stopped for his passage. He had a right to assume that his right-of-way would be re-

spected and that all cars approaching in the two southernmost lanes would not pass the stopped cars and interfere with his safe passage over the crosswalk. At the center of the intersection he still had the green light. He was struck when almost across the intersection. The question of whether he should have seen defendants' vehicle sooner and stopped or otherwise avoided the accident is clearly a matter for the jury's consideration and not for this court to determine as a matter of law. To hold otherwise, in effect, would be to hold that a plaintiff pedestrian, having entered a crosswalk and having the right-of-way, continues to cross at his peril. Plaintiff cannot be charged with negligence, as a matter of law, for a failure to waive his right-of-way because of a failure to see defendant in time to avoid the accident, especially when he had a right to assume that defendant would respect his right-of-way and stop, if necessary, to permit his passage. In the case of Beck v. Trustin, 177 Neb. 788, 131 N. W. 2d 425, similar contentions were made as to plaintiff pedestrian in a crosswalk. Therein we said: "As pointed out in Costanzo v. Trustin Manuf. Corp., 176 Neb. 136, 125 N. W. 2d 556, before a verdict can be directed against a motorist for failing to see an approaching vehicle at a nonprotected intersection, the position of the approaching vehicle must be undisputedly located in a favored position. Certainly, a pedestrian with a right-of-way is in a much stronger position, and if his right-of-way is to be protected, we cannot permit the failure to see an approaching car or a misjudgment as to its speed to be the sole criteria. *The failure of a pedestrian with the right-of-way to see an approaching car within the limit of danger or to misjudge its speed does not ordinarily constitute contributory negligence as a matter of law. It is no more than evidence from which a jury may find contributory negligence.*" (Emphasis supplied.)

Plaintiff was not required as a matter of law to keep a continuous lookout for the defendant driver as he

crossed the intersection on the crosswalk. He had a right to assume defendant driver would respect his right-of-way until he had notice to the contrary. The issue of his contributory negligence was clearly for the jury's determination. There is no merit to defendants' contention.

The trial court, in instruction No. 3 relating to the statement of the issues, set out three alleged particular acts of contributory negligence on the part of the plaintiff. Defendants contend that the trial court erred in not specifically informing the jury that it could find the plaintiff guilty of contributory negligence if it found the defendants had proven one or more of these allegations. But the court did set out three distinct and separate alleged acts of negligence. And we no not feel the jury was misled into believing that all three acts had to be proved to constitute contributory negligence. Implicit in the separate statement of acts of negligence was the inference that proof of any one of them could constitute negligence. Further, in instruction No. 5 in defining contributory negligence the court stated, "By this is meant *any* negligence of plaintiff directly and proximately contributing to cause the accident." (Emphasis supplied.) In defining negligence the court stated, "The doing of some act * * *" or "the failure to do some act * * *." In the light of the fact that the court set out three particular and separate acts of contributory negligence, we fail to see any error in the instruction. Instructions should be considered together and if, when considered as a whole, they correctly state the law, error cannot be predicated thereon. Bunselmeyer v. Hill, 179 Neb. 140, 137 N. W. 2d 354; O'Brien v. Anderson, 177 Neb. 635, 130 N. W. 2d 560.

Defendants complain that the trial court permitted the plaintiff, during the trial, to amend his petition to allege damages for future pain and suffering. Under the statute, section 25-852, R. R. S. 1943, and our cases, this matter rests in the sound discretion of the trial court and

error cannot be predicated thereon in the absence of an abuse of discretion. See Sleezer v. Lang, 170 Neb. 239, 102 N. W. 2d 435. Defendants fail to point out wherein they were prejudiced. They introduced medical testimony by a doctor who examined plaintiff prior to trial and who testified extensively as to plaintiff's injuries and future disabilities. They made no motion for a continuance. No abuse of discretion by the trial judge has been shown. There is no merit to this contention.

Defendants complain that the trial court instructed on the issue of aggravation of a preexisting injury or condition. They do not complain of the substance of the instruction but say it was not warranted by the pleadings. The instruction is amply supported by the evidence, and under the pleadings it was the trial court's duty to instruct as to what injuries and damages were recoverable as a proximate result of the accident. It could be argued, with more force, that the failure to instruct on this issue would be prejudicial to defendants. There is no merit to this contention.

Defendants complain of the failure of the court to instruct the jury to reduce to its present worth any amount allowed for future damages. Defendants made no request for such an instruction. If a defendant does not tender an instruction proper to the evidence for a present worth recovery of damages, it is not error for the trial court to fail to instruct thereon. Wolfe v. Mendel, 165 Neb. 16, 84 N. W. 2d 109; Patras v. Waldbaum, 170 Neb. 20, 101 N. W. 2d 465.

Defendants complain of the admission in evidence of a diagram, exhibit 9. This diagram is not drawn to scale, but it is a reasonably accurate and correct portrayal of the undisputed testimony of the witness St. Lucas simply showing the position of the two cars at the crosswalk and the St. Lucas car in the third lane of traffic about a car length back. It presents a visual picture of his verbal testimony which is undisputed. The introduction in evidence of a map, chart, or diagram

illustrating the scene of a transaction and the relative location of objects rests in the sound discretion of the court, and if they are reasonably accurate and correct are admissible in evidence. See Kroeger v. Safranek, 161 Neb. 182, 72 N. W. 2d 831.

Finally, defendants complain that the verdict in the sum of $18,867 was excessive. The amount of damages in cases of this type is not based on any legal rule or formula for measuring them and rests largely in the sound discretion of the jury. It will not be set aside unless so clearly exorbitant as to indicate passion and prejudice or disregard of the evidence or controlling rules of law by the jury. Baylor v. Tyrrell, 177 Neb. 812, 131 N. W. 2d 393; Fridley v. Brush, 161 Neb. 318, 73 N. W. 2d 376. Plaintiff's special medical expense was $2,367. He was in shock and near death in the hospital immediately after the accident. His main injuries were multiple fractures of the pelvis and fractures and dislocation in the area of the left hip joint. Pain and swelling of the left leg and foot were involved. There was hemorrhage from the fractures into the surrounding areas of his body. He was in traction about 6 weeks. He was not allowed to step on his left leg until November 16, 1963. He uses a cane, becomes tired after walking 2 or 3 blocks, his left foot is shortened, he has pain in his left foot and leg, and his left leg is swollen. The accident aggravated a previous heart condition. The evidence is that he can no longer work in the yard, help with the housework, paint, or do any of the things around the house he did before the accident. He drags his left foot, his left leg and foot ache at night, and he has to get up and massage his foot. There are other details of his injuries and pain and suffering which need not be recited here. At the time of the trial his condition had become stabilized. The medical testimony is that he has a 30 to 40 percent permanent partial disability of the left leg and a 20 percent permanent partial disability of the body as a whole. He has a permanent arthritic

condition in his left hip, limitation of motion, weakness of the left leg, and permanent vascular damage to the left lower extremity. He has practically no capacity to do any work and pain, suffering, and discomfort in varying degrees have been the companions of the limited recovery he has achieved. He has a life expectancy of about 10 years.

Defendants cite no comparable cases and, other than to state that the plaintiff is retired, 71 years of age, and lost no income, make no analysis of the evidence. It is hazardous to attempt to color match cases in this area but in Fridley v. Brush, *supra,* we sustain a $16,500 verdict in favor of plaintiff with a 15 percent disability of the right leg. Baylor v. Tyrrell, *supra,* is in many respects comparable, with a left hip and leg injury resulting in a 20 to 25 percent disability to a man with a 5-year life expectancy, where we sustained a verdict in the sum of $14,200. There is no mathematical formula for the translation of pain and suffering and permanent disability into terms of dollars and cents. It is a matter left largely to the discretion of the jury which saw the witnesses and heard the evidence. As we view the record, there is nothing to indicate that the verdict was the result of passion or prejudice or disregard of the evidence or controlling rules of law.

We have examined the whole record and the various contentions of the defendants in this case. The record is without prejudicial error and the judgment is affirmed.

AFFIRMED.