HEZIKIAH D. STEWART, APPELLEE, V. RITZ CAB COMPANY, APPELLANT.

178 N. W. 2d 577

Filed June 26, 1970. No. 37520.

Gross, Welch, Vinardi, Kauffman, Schatz & Day, for appellant.

Warren C. Schrempp and Henry Rosenthal, Jr., of Schrempp, Rosenthal, Bruckner & McLane, and Levin & Gitnick, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and COLWELL, District Judge.

WHITE, C. J.

From a jury verdict and judgment for the plaintiff in the sum of $44,000, arising from a rear-end collision automobile accident, the defendant appeals. The defendant asserts on this appeal, first, that the court erred in directing a verdict for the plaintiff on the issue of liability; and second, that the jury verdict in the sum of $44,000 was excessive. We affirm the judgment of the district court.

The plaintiff's automobile was halted for an intersection traffic light at Twenty-fourth and Binney Streets in Omaha, Nebraska, betwen 5 p.m. and 6 p.m. on June 12, 1966. It was stopped at the time the accident occurred. Plaintiff's automobile was struck from behind by the defendant's taxi cab. The taxi driver testified that as he was approaching the intersection behind the plaintiff that someone yelled "taxi" and that he turned

to see who had requested his services. His own testimony is that without effective application of his brakes, the taxi ran into the plaintiff's stationary automobile at an estimated speed of 25 miles per hour. The collision sent plaintiff's automobile forward where it came into contact with a third automobile, which was also stopped at the traffic light. The road was paved, dry, no other automobile movement was involved in the collision, there was nothing to impede the taxi driver's vision, and it is not asserted that there were any special factors, except the diversion of attention to a possible customer, to serve as an explanation for the accident. The taxi driver testified as follows: "Q. In connection with your operation of that cab, Mr. Gordon, I take it that you didn't see the stopped car ahead of you before you hit it? A. No, I didn't. Q. And so you didn't increase your speed any? A. No. Q. In other words, you felt because of the fact that you say someone shouted, shouted at you, you took your eyes off of the road and the first thing you know was that you had hit the car ahead? A. True. Q. And it was stopped, wasn't it? A. Yes. Q. Now then, I take it then you hadn't put on your brakes at all before the time you hit the car? A. I put on my brakes, I had looked around before I hit him, but it was too late. I was estimating 25 miles per hour. Q. When you hit him? A. Yes. Q. So to sum the thing up, as far as the velocity of your cab, it was going 25 miles per hour when it hit the stopped car? A. Sure. Q. *And had you been looking ahead rather than over at something else, the accident wouldn't have happened, would it? A. That's right.*" (Emphasis supplied.)

It is not asserted or argued that the plaintiff was or could be found guilty of contributory negligence under the facts in this case. He was parked and stopped properly at an intersection traffic light on a paved, dry road with no visibility problems. It appears from the above testimony of the taxi driver himself that it is conclusively

established that the proximate cause of this accident was the failure of the taxi driver to keep a proper lookout and control his automobile in order to avoid the collision. It is not necessary, for a solution of liability in this case, to resort to the application of any special doctrine of automobile negligence law. The evidence is direct, undisputed, coming from the lips of the taxi driver himself and conclusively establishes a set of facts that reasonable minds could not reach a different conclusion with reference to the issue of liability. Where the facts adduced to sustain the issue of negligence are such that reasonable minds can draw but one conclusion therefrom, it is the court's duty to decide the question as a matter of law, rather than submit it to a jury for determination. Lindelow v. Peter Kiewit Sons, Inc., 174 Neb. 1, 115 N. W. 2d 776; Crawford v. Soennichsen, 175 Neb. 87, 120 N. W. 2d 578. A verdict should be directed if the evidence is undisputed or if the evidence, even though conflicting, is so conclusive that it is insufficient to justify a verdict or sustain the judgment. Baxter & Sons v. Sofio, 182 Neb. 599, 156 N. W. 2d 141. The defendant argues that the "momentary" inattention of the taxi driver is sufficient to submit the issue of his negligence to the jury. We do not agree. While the doctrine of momentary inattention or diversion may have some pertinency to the issue of gross negligence in a guest-host relationship, it has no proper application in the circumstances here in a busy city traffic intersection and the close distances and judgments that must be made under crowded traffic conditions. We point out further that by the taxi driver's own admission, he struck the plaintiff's automobile while proceeding at 25 miles per hour into the rear end of a properly stopped automobile. It appears conclusively that the sole proximate cause of this accident was the negligence of the taxi driver under the circumstances and the trial court not only was correct but it was its duty to direct the verdict

for the plaintiff in this situation. There is no merit to this assignment of error.

It appears that the main attack upon the verdict in this case is on the grounds of the excessiveness of the judgment. We approach a discussion of the evidence as to damages in this case with a preliminary observation as to the attitude that this court is required to take in judicially reviewing a damage verdict. It appears from our cases that where the recovery was not a mere matter of computation, and depends upon the intangible and quite subjective elements of pain and suffering and future disability, that it will not be interfered with unless it is so excessive and so grossly unresponsive to the evidence as to be indicative of prejudice, passion, partiality, or corruption on the part of the jury, or unless it appears to be based upon some oversight, mistake, misconception, or misinterpretation, or a consideration of elements not within the scope of the accident. Morford v. Lipsey Meat Co., Inc., 179 Neb. 420, 138 N. W. 2d 653; Zawada v. Anderson, 181 Neb. 467, 149 N. W. 2d 329; Baylor v. Tyrrell, 177 Neb. 812, 131 N. W. 2d 393; Fridley v. Brush, 161 Neb. 318, 73 N. W. 2d 376; Yount v. Seager, 181 Neb. 665, 150 N. W. 2d 245. The evidence discloses that the plaintiff was 57 years of age at the time of the trial, and had been employed with the Omaha Post Office Department for about 20 years. Prior to the accident he was a mail carrier in good health, carrying an average of 35 pounds of mail at the beginning of his $3\frac{1}{2}$ mile route. The evidence discloses that he was struck from the rear and knocked forward by a violent impact, with the taxi driver's automobile striking plaintiff's vehicle at a speed of 25 miles per hour *at the time of the impact*. The crash ripped the seat plaintiff was occupying from its moorings. He was hospitalized for a week in November 1966, after which he attempted to work but it was necessary for him to be hospitalized again in June 1967. His injury was a herniated disc in the fifth lumbar root on the right side, and he was hospitalized

for 21 days for an operation. He had a life expectancy at trial time of 18.23 years and his treatment doctors testified that his permanent disability was between 10 and 15 percent of the body as a whole. It is significant that the plaintiff was examined by the defendant's doctor but he was not called to testify as a witness in the case. These objective facts establish, and the testimony conclusively proves, that pain and suffering during this period of time and in the future will be the companions of his objectively established permanent disability and loss of motion in his back. The plaintiff lost 1,472 hours from his employment due to the injury at $3.41 per hour or a total of $5,019.52. Plaintiff's property damage amounted to $713.57; hospital, medical, and miscellaneous expenses amounted to $2,546.35, or a total in special damages of $8,279.44. The defendant has cited a number of cases in connection with the setting aside of excessive verdicts. We have examined them and none of them is comparable. As we stated in Zawada v. Anderson, *supra,* it is hazardous to attempt to color match cases in this area. In Fridley v. Brush, *supra,* we sustained a $16,500 verdict in favor of a plaintiff with a 15 percent disability of the right leg only, while in this situation the special damages are much greater and common human experience tells us that a disability to the body as a whole, involving the back and the pain and suffering incidental to the use and motion of the back, warrants a higher recovery. In Baylor v. Tyrrell, *supra,* with a left hip and leg injury this court sustained a jury verdict for an elderly man with a 5-year life expectancy, in the sum of $14,200. Almost all of these cases are also subject to the observation that an adjustment must be made in the light of the present inflationary conditions as to the value of money. As we said in Zawada v. Anderson, *supra,* there is no mathematical formula for the translation of pain and suffering and permanent disability in the terms of dollars and cents. It is a matter left largely to the

discretion of the jury which saw the witnesses and heard the evidence. Again, we can find nothing in this record to show that the verdict was the result of passion or prejudice or disregard of the evidence or the controlling rules of law. There is no evidence of misconduct of the jury, or no contention that the jury was improperly instructed with reference to the issue of damages. Yount v. Seager, *supra,* involved an elderly retired plaintiff. The medical special damages amounted to $1,791 and the loss of earnings was minimal to the date of trial because the plaintiff was retired and doing only part-time work, earning $1,200 per year. In affirming a verdict for $48,600 this court said: "The defendant's final contention is that the verdict is excessive. For support he reiterates in his brief the matters considered before in this opinion. The plaintiff suffered severe injuries of a permanently crippling nature. The special damages in comparison were minimal. '* * * where recovery is not a mere matter of computation, it will not be interfered with unless so excessive or so grossly inadequate as to be indicative of prejudice, passion, partiality, or corruption on the part of the jury, or unless it appears to have been based on an oversight, mistake, misconception, or misinterpretation, or on a consideration of elements not within the scope of the action.' 25A C.J . S., Damages, § 196, p. 262. 'The amount of damages in cases of this type is not based on any legal rule or formula for measuring them and rests largely in the sound discretion of the jury.' Zawada v. Anderson, 181 Neb. 467, 149 N. W. 2d 329."

The previously quoted rule of law warranting this court's power on judicial review to set aside a jury verdict, was not designed nor should it ever be determinative to warrant this court to sit as a jury and make its own independent determination of the amount of damages to be awarded in a case of this nature.

The trial court properly directed a verdict on the issue of liability in this case, the issue of damages was

fairly and properly submitted to the jury, and no error appears in the record. The judgment of the district court is correct and is affirmed.

AFFIRMED.