ELENA SICIUNAS, APPELLEE, V. CHECKER CAB COMPANY, INC., A CORPORATION, APPELLANT.

217 N. W. 2d 824

Filed May 9, 1974. No. 39252.

Gross, Welch, Vinardi, Kauffman & Day and William J. Dunn, for appellant.

Warren C. Schrempp and Richard J. Dinsmore of Schrempp, Bruckner & Dinsmore, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, Mc-COWN, NEWTON, and CLINTON, JJ., and WHITE, District Judge.

C. THOMAS WHITE, District Judge.

This is a personal injury action. The plaintiff sued in the District Court for medical expenses, pain, disability, and loss of wages and earning capacity, alleged to have resulted from an incident which occurred while she was a paying passenger in the defendant's cab. The cause was tried to a jury, resulting in a verdict for the plaintiff of $19,230.70. Motions for judgment notwithstanding the verdict or for a new trial were overruled. Defendant Checker Cab Company appeals.

Defendant's assignment of error relates to three areas: Admission of certain evidence on cross-examination of defendant's witness, errors in instructions, and failure to set aside the verdict on the ground of excessiveness.

The age of plaintiff, Elena Siciunas, on the date of the injury, August 10, 1971, was 56 years. She is a naturalized citizen of the United States, having emigrated from Lithuania in 1950. She was widowed in 1945. She and her deceased husband are the parents of four children. At the date of the accident, plaintiff was employed by Coffee Time, Inc., which concern

operates the employees' cafeteria at Wilson Packing Company at 27th and Y Streets in Omaha. Her hours of work were from 5:30 a.m. to 2 p.m. The plaintiff had a standing order for a Checker Cab to pick her up at 5 a.m. On the date of the injury the cab appeared at her home at 5333 South 33rd Street in Omaha, at 4:30 a.m. The plaintiff dressed hurriedly and entered the cab. The normal or most direct route to the Wilson Plant from her home was east on S Street to 30th Street. The evidence shows 30th Street is a protected one with stop signs on both the west and east sides thereof. The route is then south on 30th Street to Y Street and east on Y Street to 27th Street.

According to the plaintiff, the defendant's driver did not stop at the stop sign on S Street and did not turn south, but continued across the intersection to a distance on the opposite side of the intersection where he halted after the plaintiff's screams of pain. The evidence shows that 30th Street at this intersection has a substantial crown in the middle of the street and relatively sharp dips to facilitate surface drainage on 30th Street. The plaintiff testified that as the cab was crossing, "A big noise. I jumped to the ceiling. I grabbed the seat." The driver in response to plaintiff's question said, "I think I hit the curb." The driver took plaintiff to work and later that morning plaintiff entered Archbishop Bergan Mercy Hospital where it was discovered that she had suffered a recent compression fracture of the first lumbar vertebra.

The defendant's driver testified by deposition that after picking up the plaintiff he proceeded to coast to the stop sign, intending to stop. That prior to the point where he anticipated stopping, there was a slight jolt in the steering wheel, and the plaintiff complained of a pain in her back. The driver then stopped at the stop sign and by reason of a car behind him, pulled across the street and stopped to render assistance to

the plaintiff. Later the driver returned to the scene and found a rock in the area where he felt the jolt. It was the driver's belief that it was the rock that he struck. He denies any significant speed or that he failed to stop at the stop sign, and denies that he told plaintiff that he had struck a curb.

Common carriers are required to exercise the utmost skill, diligence, and foresight consistent with the business in which they are engaged for the safety of their passengers and they are liable for the slightest negligence causing injury. Pruitt v. Lincoln City Lines, 147 Neb. 204, 22 N. W. 2d 651; Fielding v. Publix Cars, Inc., 133 Neb. 818, 277 N. W. 331.

Defendant complains of instructions relating to speed at the time of the incident, alleged failure to stop at a stop sign, the city and state laws relating to speed and the stop sign regulations, all of which instructions are in proper form and supported by evidence justifying their submission. The assignment is without merit.

The defendant objects to instructions in which the court submitted to the jury the plaintiff's loss of wages to date, and the value of the loss or diminution to earn in the future as well as the standard instruction relating to the computation of future damages.

The defendant's attack is twofold, first the damage instruction allowed duplicate recovery, and the evidence did not justify the submission of the element of loss of earning capacity.

The instruction complained of stated that the jury should consider: "The value of the working time, wages, and salaries lost to date due to her inability or her diminished ability to work, and the value of the loss or diminution of the power to earn in the future." It is to be observed that the instructions complained of by the defendant as allowing duplicate recovery are taken verbatim from NJI No. 4.06 and NJI No. 4.07. It is well established that loss of earnings

and loss of earning capacity are separate and distinct.

Loss of past earnings is an item of special damage and must be specifically pleaded and proved. And impairment of earning capacity is an item of general damage and proof may be had under general allegations of injury and damage. Baylor v. Tyrrell, 177 Neb. 812, 131 N. W. 2d 393.

Assuming that there was proper evidence for the submission of the latter issue (which defendant disputes), the instruction was in proper form and no duplication of recovery as the defendant suggests.

The defendant further complains that there was not sufficient evidence to justify the submission of loss of earning capacity, specifically pointing to the testimony of plaintiff's physician, Dr. Werner Jensen, that the plaintiff had "minimal permanent" disability as the result of the accident. We disagree.

The plaintiff was a cafeteria employee, and obviously not a highly paid one. She was possessed of no particular skills, and spoke only broken English. Her livelihood required that she be able to perform the tasks of the occupation she was engaged in, which required her to be able to stand on her feet for prolonged periods, to lift and carry objects, to walk about, and on occasion to extend her arms above her head and shoulders; each of these physical tasks were shown to have been limited or impaired as the result of the accident. A person employed in a sedentary occupation would probably not be entitled to the submission of this issue, but this is not that case. We must deal, and the tortfeasor must be responsible in damages to the persons injured, as they are. The degree of disability which would justify the submission of this issue is largely dependent on the facts of each case. In this case the court properly submitted that issue.

Defendant also assigns as error the trial court's ruling allowing the plaintiff to introduce in evidence the com-

plete statement of the plaintiff taken at Archbishop Bergan Mercy Hospital by a representative of the defendant Cab Company. The plaintiff on direct examination testified that she thought it was the first time she had ridden with the cab driver. Defendant on cross-examination properly called the plaintiff's attention to the statement and to her answer in the statement, "I think I saw him once . . ." and answered, "It may have been true," but "I don't remember him . . . seeing now."

The defendant's investigator Vloch was called by defendant and testified to the question and answer. The plaintiff requested the trial court to require of defendant the statement and the court ordered defendant to produce it. The court then permitted the plaintiff's attorney to elicit the plaintiff's answers to the remainder of the questions in the statement.

The defendant carefully elicited from the witness the facts relating to the taking of the statement, but then elicited only the desired question and answer, and contends that admitting the entire statement into evidence violates the rule on strict cross-examination. The area covered by defendant was the entire circumstance of the statement and not merely one question and one answer. Having opened the subject, it is precluded from objecting to the plaintiff's further inquiry.

In addition, we have held that the admission of prior consistent statements, after a witness has been impeached with a prior inconsistent statement, is largely a matter within the discretion of the trial court. Anderson v. Evans, 168 Neb. 373, 96 N. W. 2d 44. We find no abuse of discretion.

The verdict of a jury will not be disturbed on appeal on the ground that it is excessive unless it is shown that it was the result of passion or prejudice. Stewart v. Ritz Cab Co., 185 Neb. 692, 178 N. W. 2d 577.

The plaintiff's loss of earnings and medical expenses

were $1,473.95. She had a life expectancy of 17.51 years at the time of trial.

The verdict has not been shown to be so excessive that it appears to be the result of passion or prejudice. Therefore, we will not disturb it on appeal.

No error appearing, the judgment of the trial court is affirmed.

AFFIRMED.